# Oregon Railway and Navigation Company *v.* Gates, et al.

Garnishment.—A garnishment operates only on the legal rights of the defendant in the attachment or judgment—such rights as the debtor could, by action at law, enforce in his own name.

Attachment.—An attaching creditor cannot acquire through his attachment any higher or better rights to property or assets attached than the defendant had when the attachment was made, unless he can show some fraud or collusion by which his rights were impaired.

As a general rule, a court of equity will not interfere to relieve a defendant who has neglected to make his defense at law.

Appeal from Wasco County.

*W. Lair Hill*, for appellant.

*J. E. Atwater, B. Whitten*, for respondents.

By the Court, Lord, J.:

This was a suit instituted for the purpose of restraining and enjoining an execution, issued upon a judgment obtained against the plaintiff under this state of facts: On the 12th day of July, 1881, Frank Cambloss, a timber inspector for the plaintiff, received of M. Groper a lot of railroad ties for the company. When the receipt of the ties were to be acknowledged, Groper and one Joseph Roemer were present, and by the direction of Groper, and with the consent of Roemer, who claimed to be interested in the ties, Cambloss made out the receipt to Roemer, acknowledging the receipt of the ties, and the sum of money due him from the company. Roemer assigned the receipt to one J. B. Condon, to whom the amount due for the ties was paid on the 8th day of August, 1881. On the 2nd day of August, 1881, the defendants sued Groper and garnished the plaintiff, by serving the writ of garnishment upon J. N. Fordyce, cashier and agent of the plaintiff at The Dalles, who gave to the

defendant, Sheriff Storrs, a certificate of indebtedness by the plaintiff to said Groper for the amount due for the aforesaid railroad ties by reason of an inadvertence or mistake in Cambloss in reporting to the company an account of said ties in favor of Groper, and upon this account and without any knowledge of the receipt, Fordyce gave the certificate. Judgment was rendered in the case of the defendants against Groper and plaintiff for $414 14 and execution ordered to compel the plaintiff to pay the judgment. As soon as the mistake was discovered by the plaintiff, a motion, supported by affidavits, was filed by the plaintiff for the purpose of setting aside the judgment as against the plaintiff, but the court refused to act in the premises, presumably for want of authority in the mode sought. The present suit was then instituted, and upon the facts as above stated, refused to grant the injunction, and to reverse which decree, and secure the injunction, the matter is brought to us by this appeal. A garnishment operates only on the legal rights of the defendant in the attachment or judgment—such rights as the debtor could by action at law enforce in his own name. The plaintiff acquires no greater rights against the garnishee than the defendant himself possesses, except when the garnishee is in possession of property of the defendant under a fraudulent transfer from him. Nor does garnishment have any retroactive effect, so as to affect prior transactions between the garnishee and the defendant. Only, therefore, such demands can be subjected to garnishment as the defendant in his own name would have a right to recover in an action at law. (Drake on Attach., secs. 458, 462; *Hassell* v. *Whitman*, 19 Ala., 135; *Cook* v. *Walthall*, 20 *id.*, 334; *Godden* v. *Pierson*, 42 *id.*, 390; *McDermott* v. *Donegan*, 44 Mo., 85.) At the time Fordyce gave his certificate to the sheriff, the plaintiff did not owe Groper for

the ties received by Cambloss. By consent of all the parties,
that indebtedness for the ties was transferred to Roemer, or
his assignee, and a certificate, or receipt given for it, which
authorized the cashier to pay it when presented. Groper
had no claim against, nor could he have collected pay for the
ties from the plaintiff. Certainly, the defendants can only
claim what Groper could have claimed—they are entitled
to have what he was entitled to have and nothing more. It
is not a case where liability has been incurred, or money or
goods advanced on the faith of any liability of the plaintiff
to Groper. The defendants are in Groper's place, and only
entitled to enforce what he could enforce in an action at law
and in his own name. Nor does it appear that at the time
credit was given to Groper by the defendants, that it was
done upon the suggestion, or in the expectation, that the
plaintiff would pay them, or that the plaintiff had any
knowledge of any indebtedness of Groper to the defendants.
The action at law by the defendants against Groper was
commenced nearly a month after the transaction had taken
place, and when the defendants applied through the sheriff
in that action to the cashier for a certificate of any indebted-
ness, he stated just what appeared on the books—it was the
only guide he had—and answered that the company was
indebted to Groper in the amount stated in the certificate.
But it was not in fact true. The plaintiff owed Groper
nothing, but had promised to pay what they did owe Groper
for the ties to Roemer, or his assignee. It is true, that the
timber inspector, by mistake or inadvertence, reported the
ties as received from Groper, probably from the fact that
the original dealing and delivery was with him in regard to
the ties, but this mistake could not make the plaintiff in-
debted to Groper or in any way enlarge the rights of the
defendants, for they stand in his shoes. There is no evi-

dence or pretence of any fraud or collusion or purpose to aid the defendant, Groper, in avoiding the indebtedness, or that the plaintiff ever knew of any such indebtedness to the defendants. They cannot acquire through their attachment any higher or better rights than the defendant, Groper, had when the attachment was made, unless they can show some fraud or collusion by which their rights were impaired. Considering even that the timber inspector of the company was negligent or careless in the matter of his report, it did not work any injustice to the defendants—his mistake neither increased nor diminished their rights, nor did they lose or gain anything by it. Its effect was to make the books incorrect—certainly, a thing not to be desired by a corporation doing so large a business through the instrumentality of so many and different agents, in different localities—and to make the plaintiff indebted to Groper upon the face of them, when in fact and truth no such indebtedness to him existed. It is hardly necessary to pursue this inquiry further; the question is, will equity relieve against the judgment by perpetually enjoining it. When a defendant, after judgment, resorts to a bill in equity for the purpose of invoking the restraining powers of the court in respect to matters which would have afforded a good defense at law, he must show that his failure to make such defense is not attributable to any negligence or want of diligence on his part, but to accident, fraud, or the act of the opposite party. "When the facts existed before the trial at law, upon which relief in equity is claimed, and were known to the party suing in equity, or might have been known or discovered by the exercise of diligence, and were as much a defense at law, as in equity, no redress can be ordinarily obtained." (Story Eq. Jr., 1572.) But relief will be granted when material facts have been discovered since the

trial at law, which could not by ordinary care and diligence have been discovered before the trial. (Kerr on Injunctions, 589.) In *Freeman* v. *Miller*, 53 Texas, 377, the court say: "The true rule in such cases is, that to entitle a party to relief in equity he must show: First, that his failure to make full answer was not attributable to his own omission, neglect or default; Second, that he has a good defense to the entire cause of action, or to such part of it as he proposes by his petition to litigate. It is not enough to show that he was not guilty of neglect in permitting the judgment to go by default, but he must also clearly show that it was inequitable and unjust to permit it to be enforced." (*Hair & Labrozan* v. *Lowe*, 19 Ala., 224; Drake on Attachments, sec. 655; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 335.) Now it certainly would be inequitable to compel the plaintiff to pay twice, and when the plaintiff was diligent to correct the mistake as soon as discovered. Each case of this sort must depend to a great extent upon its own circumstances. Mr. Pomeroy says, "The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for relief, if it appears that the other party has not been prejudiced thereby." (2 Pom. Eq., sec. 856; Leading Cases in Equity, vol. 2, title 2, 1308; *Snyder* v. *Ives*, 42 Iowa; *Hubbard* v. *Hobson*, Brown, [Ill.,] 190; *Felch* v. *Polk*, 7 Blackf., 563.)

It is our opinion that the judgment should be enjoined, and it is so ordered.