Argued February 2; reversed February 27; rehearing denied
April 3, 1934

# WHEELER LUMBER, BRIDGE & SUPPLY CO.
## *v.* SHELTON

(29 P. (2d) 1013, 31 P. (2d) 163)

*Maurice W. Seitz,* of Portland (Weatherford & Wyatt, of Albany, on the brief), for appellant.

*Edwin Keech* and *Allan Carson,* both of Salem (Ellis, Pope & Keech and Carson & Carson, all of Salem, and Marks & McMahan, of Albany, on the brief), for respondent.

BEAN, J. It appears from the record that Sim F. Etzel was engaged in cutting rough fir lumber at a mill which he was operating some seven miles from the town of Lyons in Linn county, Oregon. On November 10, 1930, the Coast Fir & Cedar Products Company, a corporation, then engaged in buying and selling lumber in Portland, Oregon, placed its orders with Etzel for the cutting to dimensions of approximately 750,000 feet B. M. of No. 1 common fir bridge planking; Etzel then began cutting on these orders. As the lumber was cut and put in piles and tallied by Etzel, pursuant to the directions of Coast Fir & Cedar Products Company, contained in the orders, in the sawmill yard at the Etzel mill, and as it was piled Etzel from time to time executed a bill of sale of the lumber as it was so piled and delivered the same to. the Coast Fir & Cedar Products Company. Thereupon, the Coast Fir & Cedar Products Company paid Etzel for the lumber so piled and described in the particuler bill of sale. This practice continued until Etzel had cut and piled and was paid for under said orders a total of 543,485 ft. B. M., for which bills of sale were executed and payment for the lumber made by the Coast Fir & Cedar Products Company to Etzel. These bills of sale, together with the checks or drafts evidencing the payment thereof, were introduced in evidence. Payment was made as each bill of sale was issued. The bills of sale are similar; one is to the effect that Sim Etzel for the consideration of $556.60, to him paid by the Coast Fir & Cedar Products Company of Portland, Oregon, "receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell and convey unto said party of the second part, its executors, administrators and assigns all of the following described personal

property:'' (then follows a description of 69,575 feet of planking situated five miles east of Jordan on the E. H. Thomas place).

Etzel testified that he had been paid in full at the rate of $6.50 per thousand feet for the lumber represented by the bills of sale; in case he hauled the lumber to the railroad he was to receive $1.50 per thousand feet for the hauling. When the lumber was sold to the Coast Fir & Cedar Products Company that company resold the same to the plaintiff executing corresponding bills of sale to the plaintiff therefor. These bills of sale executed by the Coast Fir & Cedar Products Company to the plaintiff were introduced in evidence. John W. Miller, the president of the Coast Fir & Cedar Products Company testified, and it is not disputed, that the plaintiff had paid in full for the lumber represented by the bills of sale. A part of this lumber had been shipped out by the plaintiff Wheeler Lumber, Bridge & Supply Company. However, there was remaining at the mill yard at the time of the attachment a total of 218,325 feet of the lumber so purchased, which is the lumber described and set forth in plaintiff's complaint.

On July 18, 1932, Thurston H. Thomas brought an action in the circuit court as alleged in his answer, and caused said remaining lumber to be attached by the sheriff as the property of Sim F. Etzel, which resulted in the present action. In support of this defense the sheriff testified over the objection of plaintiff that he executed the writ in good faith and at the time of executing the same he supposed the property belonged to defendant Etzel; that he had no knowledge whatever of the interests of the plaintiff. Similar testimony was adduced by Thurston H. Thomas. Three other witnesses, on behalf of defendant, testified that the

common reputation in the vicinity of the mill was that Etzel was the owner of the lumber. This evidence was also admitted over the objections of the plaintiff.

The answer does not allege, and there was no evidence introduced and no attempt was made by defendant to prove the amount or nature of the validity of Thomas' alleged claim against Etzel in the attachment action. No attempt was made to establish other than as above stated Thomas' status as an attaching creditor.

■ At the conclusion of all the evidence a motion was made by the plaintiff for a directed verdict in its favor on the ground that the evidence showed without dispute that plaintiff, the Wheeler Lumber, Bridge & Supply Company, was the owner of the lumber and by reason of its ownership entitled to immediate possession thereof at the time this action was instituted. It is contended by plaintiff that an attaching creditor, unless he can show some fraud or collusion by which his rights have been impaired, cannot acquire through an attachment any higher or better right to the attached property than that which the defendant in the action had at the time the attachment was levied. It is stated in *Hudelson v. Sanders-Swafford Co.,* 111 Or. 600, 612 (227 P. 314):

"It is an established rule of law in this state that an attaching creditor, unless he can show some fraud or collusion by which his rights have been impaired, can not acquire, through an attachment, any higher or better right to the attached property or assets than those which the defendant in the action had at the time the attachment was made."

In *Oregon Railway & Navigation Company v. Gates, et al.,* 10 Or. 514, 515, the opinion states:

"The plaintiff acquires no greater rights against the garnishee than the defendant himself possessses,

except when the garnishee is in possession of property of the defendant under a fraudulent transfer from him. Nor does garnishment have any retroactive effect, so as to affect prior transactions between the garnishee and the defendant. Only, therefore, such demands can be subjected to garnishment as the defendant in his own name would have a right to recover in an action at law."

The defendant contends that Thurston H. Thomas, as an attaching creditor, stands in the position of an innocent purchaser. Plaintiff assigns that the court erred in refusing to grant plaintiff's motion for a directed verdict in its favor for the reason that the evidence established conclusively that the plaintiff was the owner and entitled to the immediate possession of the lumber at the time this action was instituted, and that Sim F. Etzel, at the time the lumber was attached, had no interest therein and that neither the proof nor the pleadings upon the part of the defendant in this case establishes the defendant or Thurston H. Thomas as an attaching creditor so as to place Thurston H. Thomas in the position of a purchaser in good faith without notice.

■ In replevin, where an officer justifies under a writ of attachment, he must prove the judgment or the debt: Cobbey on Replevin, § 804; citing *Newton v. Brown*, 2 Utah, 126.

Where a sheriff justifies under an execution and seeks to attack the title of the plaintiff in replevin, the sheriff must show that his execution is issued upon a valid subsisting judgment: Cobbey on Replevin, § 806.

In *Fisher v. Kelly*, 30 Or. 1 (46 P. 146), where the sheriff attempted to justify the taking of personal property under the writ of attachment, at page 8 of the report, we read:

"And the officer who acts for such creditor, in justifying an attachment of the property and his right to hold the possession thereof, must allege and show a debt due to his principal from the defendant in the writ."

And on page 9 of the report we find the following:

"The reason for this rule is found in the fact that the person causing the property of another to be attached may have done so to protect the latter's interest, and prevent a bona fide creditor from acquiring a lien thereon; and since the writ of attachment is usually issued by a ministerial officer, upon an ex parte application therefor, it is necessary for the sheriff or other officer, in justifying his proceedings thereunder, to allege and prove that the writ was properly issued, and that a debt existed as the foundation of the right to seize property claimed by a stranger." *Taylor v. Brown,* 49 Or. 423, 425 (90 P. 673).

In *Fulp v. Brashears,* 116 Or. 358, 540 (241 P. 69), which was an action against the sheriff for the possession of an automobile, at page 541 of the report we read the language of this court as follows:

"There are no facts stated in the answer showing that Ritl, the plaintiff in the writ of attachment, was a creditor of Martin, the defendant therein. A mere conclusion to that effect is all that appears."

It was held that under the allegations of the answer the defendant was not entitled to prove a special ownership in the personal property without the facts constituting such ownership being pleaded; citing *Coos Bay Railway Co. v. Siglin,* 26 Or. 387 (38 P. 192); 11 Am. Eng. Rul. Cases; *Palmer-Haworth Logging Co. v. Henderson,* 90 Or. 192 (174 P. 531).

■ The rule in this state as to the requirement of showing the indebtedness of defendant to the plaintiff

in the writ of attachment is in conformity with the general rule. As stated in 6 C. J., p. 400, § 909, thus:

"In a controversy between an attaching creditor and the claimant of the property the creditor must show that attachment defendant owed the debt or some part thereof."

The debt for which a writ of attachment can be issued must be of such a nature as will sustain an action at law; it must be a debt for which the statute authorizes a writ of attachment: Drake on Attachments, (6th Ed. § 9).

Section 4-407, Oregon Code 1930, provides in part that from the date of the attachment until it be discharged, or the writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith and for a valuable consideration of the property real or personal attached.

■ Yet before an attaching creditor can be deemed a purchaser in good faith he must allege and prove the facts establishing his position as such: *Bailey v. Hickey,* 99 Or. 251, 258 (195 P. 372); *Gates Iron Works v. Cohen,* 7 Colo. App. 341 (43 P. 667); *Barnes v. Spencer,* 79 Or. 205, 214 (153 P. 47); *Rhodes v. McGarry,* 19 Or. 222, 230 (23 P. 971). In the latter case this court, speaking through Chief Justice THAYER, stated the law relative to the right of an attaching creditor as follows:

"The respondents in this case should have alleged the facts showing that the attachment proceedings were duly commenced upon a valid debt; that the block in question was duly levied upon by the sheriff under the said proceedings; that he made a certificate containing the title of the cause, the names of the parties, a description of the real property, a statement that the same had been attached at the suit of the plaintiffs

therein, the date thereof, and that he had delivered such certificate to the county clerk of the county of Umatilla, and that the latter had duly filed and recorded it, as provided in Section 151, Civil Code; and that they had no notice or knowledge of the mistake in the deed from McGarry to appellant at the time such proceedings were taken and had. These facts, properly set forth in the answer, would doubtless have entitled the attaching creditors to claim as against the appellant, that they were entitled to be deemed purchasers in good faith, and for a valuable consideration, of the property attached.''

In *Barnes v. Spencer,* supra, this court said:

''In order for defendant Spencer, as an attaching creditor, to be deemed a purchaser in good faith and for a valuable consideration as against the plaintiff, Grace D. Barnes, who is the owner of an outstanding equity in the property upon which execution was levied, the defendant must allege and prove all the facts necessary to establish that character of his ownership as against such equity. One of such material facts is that his claim is founded upon a fair valuable consideration.''

In the case of *Gates Iron Works v. Cohen,* supra, the Court of Appeals of the state of Colorado states the law thus:

''But a party whose only claim upon the property arises from the levy of an attachment, occupies a different position in relation to the title. He has parted with no value. If his levy fails of its purpose, he sustains no loss, and is in no worse position than he occupied before the attachment. So that the reasons for extending protection to innocent purchasers who have parted with their money upon the faith of an apparent title, do not apply to his case. In the absence of statutory provision to the contrary, an attachment can operate only upon the title which the defendant actually has when the attachment is made.''

■■ The defendant introduced testimony tending to show that Etzel was in possession of the lumber in question. Possession is some evidence of ownership but mere possession unaccompanied by circumstances giving it a specific character is not sufficient evidence of ownership as to prevail against the true owner: 22 R. C. L., p. 79, § 58; *Merinella v. Swartz,* 123 Wash. 521 (212 P. 1052); *Schumann v. Bank of California,* 114 Or. 336, 344 (233 P. 860, 37 A. L. R. 1531, 1538); *Rawley v. Brown,* 71 N. Y. 85, 89. The testimony shows that the lumber was being cut for the Coast Fir & Cedar Products Company. Etzel was cutting nothing else except this particular lumber; it was cut upon specifications of the Coast Fir & Cedar Products Company and was piled at the direction of that company. There was no other planking or lumber of the same kind in the yard. Etzel's part in regard to the lumber was complete. Nothing remained to be done; measuring, piling, or anything to identify the lumber. The sale to the Coast Fir & Cedar Products Company was unquestionably complete and title to the lumber passed to that company, and when sold and conveyed by the Coast Fir & Cedar Products Company to the plaintiff title passed to the plaintiff.

In § 64-402, Oregon Code 1930, it is stated:

"Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred."

In § 64-403 it is said:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. * * *''

In the case at bar it should be remembered that the contract is one of unconditional sale.

██ Proof of ownership is sufficient to establish the right of immediate possession: *Krebs Hop Company v. Taylor,* 52 Or. 627, 633 (97 P. 44, 98 P. 494). Where the testimony of the plaintiff in a replevin suit conclusively overcomes the prima facie case made by the defendant by virtue of possession there is nothing to be submitted to the jury: *Merinella v. Swartz,* supra. In 22 R. C. L., p. 79, § 58, we read:

''Possession of personal property is some evidence of ownership, and may be sufficient in a given case to protect one dealing with the property as that of possessor. * * * But mere possession unaccompanied by other circumstances, giving it a specific character, is not such evidence of ownership as to prevail against the true owner. * * * The principle that no one can be divested of his property without his consent, and the maxim that no one can transfer a better title than he has himself, control all questions arising as to property of which a transfer is attempted, with the exceptions stated. The effect of possession as evidence of ownership is subordinate to these principles.''

In the case of *Wright v. Solomon,* 19 Cal. 64, 76 (79 Am. Dec. 196), the Supreme Court of that state said:

''Possession of personal property is only prima facie evidence of ownership and never prevails against the true owner except with reference to negotiable instruments and whatever comes under the general de-

nomination of currency. * * * The principle that no one can be divested of his property without his consent, and the maxim that no one can transfer a better title than he has himself, control all questions arising as to property of which a transfer is attempted, with the exceptions stated.''

In *Rawley v. Brown,* supra, the Supreme Court of the state of New York said:

''Possession of property alone without explanation is evidence of ownership; but it is the lowest species of evidence. It is merely presumptive and liable to be overcome by any evidence showing the character of the possession, and that it is not necessarily as owner.'' See also *Schumann v. Bank of California,* supra.

■ The defendant relies on § 64-409, Oregon Code 1930, which reads as follows:

''Where a person having sold goods continues in possession of the goods * * * the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge, or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same.''

This section is part of the Uniform Sales Act and refers to sales. It specifically applies where a person having sold goods continues in possession of the same and thereafter sells the same to another person receiving and paying value thereof in good faith and without notice of the previous sale. This section is obviously designed to prevent innocent people from being defrauded by purchasing personal property from one in possession claiming to be the owner. In the

present case there was no sale to the attaching creditor; there was no attempt on the part of Etzel to deliver possession to the sheriff or Thomas. There was no representation implied or otherwise by Etzel that he was the owner. Moreover, there is no showing on the part of the defendant or Thomas of paying value for the lumber, or that the writ of attachment was issued for a valid debt, so that in the present case we do not think that the section of the statute referred to applies. Thomas' condition is in no event any worse than it was before the attachment.

In the present case there is neither an allegation nor proof that at the time of the attachment, or at any time, the defendant Sim F. Etzel was indebted to Thurston H. Thomas, the plaintiff in the writ. The defendant did not plead or prove sufficient facts to show that the defendant or Thurston H. Thomas, plaintiff in the writ of attachment, was in the position of purchaser in good faith for valuable consideration, or to justify the taking or holding of the property involved as against the plaintiff Wheeler Lumber, Bridge & Supply Company, which had purchased the personal property involved from the Coast Fir & Cedar Products Company, which in turn had purchased the same from Etzel and fully paid therefor, as evidenced by bills of sale from Etzel to the Coast Fir & Cedar Products Company and from the Coast Fir & Cedar Products Company to plaintiff, and by the undisputed testimony in the case.

The evidence showed, without contradiction, that Etzel sold and conveyed the lumber involved to Coast Fir & Cedar Products Company and was paid therefor in full, and that the Coast Fir & Cedar Products Company sold and conveyed the lumber to the plain-

tiff. At the time of the attachment Sim Etzel had no interest in the lumber; he was no more than a caretaker. The lumber was piled for the purpose of drying, in order to lessen the weight for shipment. Whatever Etzel did with the lumber was done for the Coast Fir & Cedar Products Company, or for the plaintiff in looking after it and hauling the same. He exercised no dominion or control over the lumber and had no right to do so. A large amount of lumber that Etzel cut had been hauled from the mill and shipped. Thomas, the plaintiff in the writ of attachment, it would seem could easily have ascertained the condition and ownership of the lumber by making a reasonable investigation. The testimony plainly shows that plaintiff was the owner and entitled to the possession of the lumber in question. The mere showing that Etzel was thought by some to be the reputed owner of the lumber and in possession did not overcome the testimony of plaintiff or warrant the court in submitting the case to the jury.

There is no fraud or estoppel alleged or proved. The bona fides of the sale from Etzel to Coast Fir Cedar Products and the sale by that company to plaintiff is unquestioned. The plaintiff was entitled to a directed verdict in its favor on its motion at the close of all of the testimony. The case should not have been submitted to the jury; therefore there is no necessity of considering the assignments of error in regard to the instructions of the court to the jury.

The judgment of the circuit court is reversed and a judgment ordered entered in favor of plaintiff and against defendant in accordance with the prayer of plaintiff's complaint.

RAND, C. J., CAMPBELL and BAILEY, JJ. concur.

Petition for rehearing denied April 3, 1934

ON PETITION FOR REHEARING

(31 P. (2d) 163)

██ BEAN, J. Defendant, in an earnest petition for rehearing, intimates that the holding by this court, in effect, that Etzel's part in regard to the lumber in question was complete, was in error. The transaction being in writing and the different documents being uncontradicted, it seems as though there should be very little trouble in this regard. While, as we held, neither the defendant nor the plaintiff, in the light of the attachment referred to, was in a position of a purchaser in good faith for value, yet we desire to call attention of the learned counsel to the orders for the lumber issued by the Coast Fir & Cedar Products Company to Sim Etzel. The first directed that the destination of the lumber would be "Later". The second order of November 10, 1931, directed as follows: "Destination Stock in pile". The order provided that the lumber was "To be stripped and piled at least 200 feet from mill with no lumber or trans between mill and stacked plank". And further: "Stock to be piled at mill 8 miles from track". These orders were accepted by Sim Etzel and we think constitute contracts of sale. The lumber was sawed at the mill and stacked as directed by the Coast Fir & Cedar Products Company and after the same was so stacked bills of sale were executed by Etzel by which he "does by these presents, grant, bargain, sell and convey unto the said party of the second part", the Coast Fir & Cedar Products Company, the lumber in question. It was to be shipped as "dry fir rough plank". At the time of the execution of bills of sale the lumber was paid for by the Coast Fir & Cedar Products Company

to Etzel, and in turn, when the bills of sale were executed by the Coast Fir & Cedar Products Company to plaintiff, Wheeler Lumber, Bridge & Supply Company, payment was made by the latter company to the Coast Fir & Cedar Products Company for the lumber. The Coast Fir & Cedar Products Company was to pay for hauling $1.50 per thousand when the lumber was shipped. The defendant having attempted to justify under a writ of attachment, section 4-401, Oregon Code 1930, which provides that property of defendant may be attached, should not be overlooked.

■ The statement on behalf of defendant, that Etzel was in possession of the lumber, we think is a conclusion or an opinion of the witnesses and not in accordance with the undisputed facts in evidence. It is stated in 2 Williston on Sales (2d Ed.) 1564, § 620, discussing the validity of sales, as follows:

"An attaching creditor is to be distinguished from a creditor to whom the debtor has given property for security, since an attachment is *in invitum* and gives no greater rights in the attached property than the debtor himself had. It must be observed, however, that where the defect in the title of the property is due to fraud against creditors, this rule does not apply."

It should be borne in mind that in the case at bar no fraud in the transaction between the Coast Fir & Cedar Products Company and Etzel or between the plaintiff and Etzel is alleged or suggested.

It is contended, as we understand, that the rule enunciated in *Rhodes v. McGarry,* 19 Or. 222 (23 P. 973), does not apply except in the case of an attachment of real estate where an outstanding title is asserted. *Flegel v. Koss,* 47 Or. 366, 371 (83 P. 847),

which was a case wherein an attachment of hops was involved, applied the rule laid down in *Rhodes v. McGarry,* supra, that:

"'An attaching creditor, in order to be deemed a purchaser in good faith of the property as against one having an outstanding equity, must allege and prove all the facts necessary to establish that character of ownership in favor of a purchaser of such property as against such an equity'."

In the present case, as we view it, which was the main question upon the motion for a directed verdict, the plaintiff was not relying merely upon an outstanding equity, but was in fact the real owner of the property in question. In the Flegel case, it was mentioned that the construction placed upon this section of the code has been upheld in *Meier v. Hess,* 23 Or. 599, 601 (32 P. 755); *Raymond v. Flavel,* 27 Or. 219, 248 (40 P. 158); *Dimmick v. Rosenfeld,* 34 Or. 101, 105 (55 P. 100). See, also, *Jennings v. Lentz,* 50 Or. 483 (93 P. 327, 29 L. R. A. (N. S.) 584.

It is also contended that the rule applied in the case of garnishment does not apply in a case of attachment of property. With this contention we are unable to agree.

We have carefully examined the suggestions made by counsel.

Being satisfied with our former opinion, the petition for rehearing is denied.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.