Argued and submitted September 5, 1984, decision of Court of Appeals reversed, and judgment of the trial court affirmed May 21, 1985

STATE FARM FIRE AND CASUALTY COMPANY,
*Petitioner on Review,*

*v.*

REUTER,
*Defendant,*
BULLEN,

*Respondent on Review.*

(CA A22866; SC S30777)

700 P2d 236

Daniel M. Holland, Eugene, argued the cause for petitioner on review. With him on the petition were Jaqua, Wheatley, Gallagher & Holland, P.C., and Denise G. Fjordbeck, Eugene.

James C. Jagger, Eugene, argued the cause for respondent on review.

PETERSON, C. J.

---

* Linde, J., did not participate in the decision of this case.

## PETERSON, C. J.

This case involves collateral estoppel. "Collateral estoppel" is a term which describes these results: When an issue of ultimate fact has been determined by a valid and final judgment, that determination also settles the same issue in another action (a) between the same parties on a different claim, and (b) against persons who are so closely identified with a party that they are said to be "in privity" with parties to the earlier civil action.

Here, the dispute involves two parties, neither of whom was a party to the earlier litigation.[1] State Farm Fire and Casualty Co. (State Farm), plaintiff herein, asserts that Gail Theresa Bullen (Bullen), the victim of a sexual assault by Richard Scott Reuter (Reuter), is collaterally estopped from claiming coverage under State Farm's liability insurance policy because of Reuter's conviction of the sexual assault in the earlier criminal action.

The facts are not in dispute. Reuter was charged by indictment as follows:

"The defendant on or about the 9th day of August, 1977, in the county aforesaid, did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with Gail Theresa Bullen, a female; contrary to statute and against the peace and dignity of the State of Oregon."

Reuter pleaded not responsible by reason of mental disease or defect. The jury rejected the defense and found Reuter guilty of rape in the first degree.

At the time of the rape, Reuter had a policy of liability insurance with State Farm which contained this exclusion:

"This policy does not apply * * * to bodily injury or property damage which is either expected or intended from the standpoint of the insured * * *."

Bullen brought a damage action against Reuter, alleging that Reuter's conduct occurred while he was "suffering from a

---

[1] Actually, there are three parties in this case. Defendant Reuter made no appearance.

The case previously was before us in *State Farm Fire & Cas. v. Reuter,* 294 Or 446, 657 P2d 1231 (1983). The Court of Appeals decision on remand is found at 68 Or App 17, 680 P2d 1000 (1984)

mental disorder which, among other things, caused [Reuter] to be unable to conform his conduct to the requirements of law." State Farm then filed this declaratory judgment action naming Reuter and Bullen as defendants, seeking a declaration of its obligations. Reuter made no appearance.

State Farm filed a motion for summary judgment, asserting:

> "On or about August 9, 1977, Richard Scott Reuter raped Gail Theresa Bullen near Bailey Hill Road in Eugene, Lane County, Oregon. In April, 1978, Richard Scott Reuter was found guilty of first degree rape as a result of this incident by a jury after a full trial on all issues in Case No. 77-4882, in and for the Circuit Court of Lane County. In that claim, the defense of diminished mental capacity was actually raised and fully adjudicated by Richard Scott Reuter. The jury rejected the defense of diminished mental capacity and found Richard Scott Reuter guilty of first degree rape * * *.

> "State Farm contends in this lawsuit that homeowners policy No. 37-144857 does not provide liability or any other insurance coverage for anyone as a result of the described August 9, 1977 rape incident."

The trial court granted State Farm's motion for summary judgment. Judgment was entered against Bullen and Reuter. Bullen appealed; Reuter did not. The Court of Appeals reversed. *State Farm Fire & Cas. v. Reuter,* 68 Or App 17, 680 P2d 1000 (1984).

■■ If a person has had a full and fair opportunity to litigate a claim to final judgment, most courts (including this one) hold that the decision on a particular issue or determinative fact is determinative in a subsequent action between the parties on the same claim (direct estoppel). *See, e.g., Waxwing Cedar Products v. Koennecke,* 278 Or 603, 610, 564 P2d 1061, 1064-65 (1977); *Bahler v. Fletcher,* 257 Or 1, 4, 474 P2d 329, 331 (1970). The judgment generally is conclusive as well in a different action between parties as to issues actually litigated and determined in the prior action if their determination was essential to the judgment (collateral estoppel). *See, e.g., Bahler v. Fletcher, supra,* 257 Or at 4, 474 P2d at 331. Therefore, it is appropriate to determine:

> 1. Was the issue decided in the prior adjudication identical with the one now presented?

> 2. Was there a final judgment on the merits?

3. Was the party against whom collateral estoppel is sought to be applied a party or in privity with a party to the prior adjudication?[2]

Here, there was a final judgment on the merits which answers the second inquiry. As to the first question — what issue was decided — the Court of Appeals held that "plaintiff failed to produce any evidence regarding Reuter's mental state * * *. Based on the evidence produced, we cannot say that plaintiff met its burden of proof." 68 Or App at 22 n 2, 680 P2d at 1002 n 2.

We disagree. The record supports every assertion of fact made by State Farm in its motion for summary judgment. There is no question but that the jury in the criminal case rejected Reuter's claim that he was suffering from a mental disorder that caused him to be unable to conform his behavior to the requirement of law. The jury found, beyond a reasonable doubt, that Reuter "did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with * * * Bullen."

The question then becomes: Is an attack that was "knowingly" committed "expected or intended from the standpoint of the insured"? The Court of Appeals held that the exclusion was applicable because "[a]n attack that was 'knowingly' committed must be, under the policy 'either expected or intended from the standpoint of the insured.' " 68 Or App at 20, 680 P2d at 1001-02. Bullen has not sought review of this holding.[3] Therefore, for the purposes of this

---

[2] See *Teitelbaum Furs, Inc. v. Dominion Insurance Company*, 58 Cal 2d 601, 604, 25 Cal Rptr 559, 560, 375 P2d 439, 440 (1962).

[3] An interesting issue lurks in this case. It has not been raised or briefed, and we do not decide it.

State Farm's insurance policy excludes coverage for "bodily injury * * * which is either expected or intended from the standpoint of the insured." State Farm has the burden of proving the applicability of its exclusion. At the time of the occurrence and criminal trial, these Oregon statutes provided:

ORS 161.055(2):

"When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971, is raised at a trial, the defendant has the burden of proving the defense by a preponderance of the evidence."

ORS 161.295(1):

"A person is not responsible for criminal conduct if at the time of such

appeal, we will consider a conviction of knowingly committing first degree rape necessarily to mean that the rapist either expects or intends to injure the victim. With that assumption coverage is excluded under the instant policy.[4]

■        That brings us to the third question: Was Bullen in privity with Reuter?[5] A person may be bound by a previous

conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

ORS 161.305:

"Mental disease or defect excluding responsibility under ORS 161.295(1) or partial responsibilty under ORS 161.300 is an affirmative defense."

An affirmative defense is one that admits the doing of the act charged, but seeks to excuse, justify or mitigate it. A finding of nonresponsibility under ORS 161.295(1) is not necessarily inconsistent with a finding that the defendant was acting intentionally. Rather, the affirmative defense is essentially a plea along these lines:

Even though I was acting intentionally, I am not responsible because, at the time, and as a result of mental disease or defect, I lacked substantial capacity either to appreciate the criminality of my conduct or to conform my conduct to the requirements of law.

The interesting lurking question is whether a finding in Bullen's favor on her claim that Reuter was "suffering from a mental disorder which * * * caused [Reuter] to be unable to conform his conduct to the requirements of law" would necessarily bring Bullen's claim within the policy coverage, for such a finding is not necessarily inconsistent with a finding that Reuter was acting intentionally.

Other courts have addressed the effect of a finding of insanity or mental derangement within the meaning of similar intentional injury exclusions of other policies. *See, e.g., Ruvolo v. American Cas. Co.,* 39 NJ 490, 498, 189 A2d 204, 208-09 (1963) ("We hold that if the insured was suffering *from a derangement of his intellect* which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and killed Dr. LaFace, his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract.); *Aetna Cas. & Sur. Co. v. Dichtl,* 78 Ill App 3d 970, 975, 398 NE2d 582, 587 (1979) (insurance recovery not precluded by intentional injury exclusion where wife found not guilty of murder by reason of insanity in killing husband, citing *Ruvolo); Rosa v. Liberty Mutual Insurance Company,* 243 F Supp 407, 409 (D Conn 1965) (insured was "schizophrenic," "incapable of control of his behavior," suffering *from mental illness which rendered him incapable of committing an 'intentional' act,"* citing *Ruvolo* and other cases).

[4] The Court of Appeals did not cite nor has any party raised the application of ORS 43.160, which provides:

"That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

As the text makes clear, the jury's finding on the determinative issue is not in dispute. The result in this case does not turn on ORS 43.160.

[5] The Court of Appeals concluded that Bullen was not in privity with the state

adjudication either by reason of being a party in the case, or by reason of participation which is substantially equivalent to having been a party, or from having a legal relationship that is derived from one who was a party. *Gaul v. Tourtellotte,* 260 Or 14, 20, 488 P2d 416, 420 (1971), states the rule:

> "* * * [C]ollateral estoppel may be invoked only *against* someone who was a party, or who was in privity with a party, to the first action. * * * Individuals in privity with named parties include those who control an action though not a party to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims." (Emphasis in original; citations omitted.)

"Privity," in a collateral estoppel context, is a chameleon-like term. The editors of the first Restatement of Judgments (1942) invoked the term to describe an idea, "the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." Restatement Judgments 389, § 83, comment *a* (1942).[6] *Wolff v. DuPuis,* 233 Or 317, 322, 378 P2d 707, 710 (1963). Unable to define the term more clearly, the editors defined privity by what it included:

— Those "who control an action although not parties to it;"

— Those "whose interests are represented by a party to an action;"

— "Successors in interest to those having derivative claims."

---

because she "lacked sufficient control of Reuter's prosecution." *State Farm Fire & Cas. v. Reuter,* 68 Or App 17, 21, 680 P2d 1000, 1002 (1984). We agree with that conclusion.

[6] The editors also stated:

"The statement that a person is bound by or has the benefit of a judgment as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by and entitled to the benefits of all or some of the rules of res judicata by way of merger, bar or collateral estoppel. To determine when and to what extent he is bound or has rights, it is necessary to consider his relation to the parties to the action or the the subject matter of the action." Restatement Judgments 390, § 84, comment *a* (1942).

Restatement Judgments 389, § 83, comment *a*.[7]

The editors of Restatement (Second) Judgments (1982) fared little better. They have reduced but not abandoned the use of the term. In the introductory note to Chapter 4 they state:

> "A person may be legally affected by a judgment, broadly speaking, by reason either or being a party or equivalent participant in the litigation, or from having a legal relationship that is derivative from one who was a party, or in being so situated that his own rights or obligations are conditioned in one way or another by a judgment involving another person. * * *" Restatement (Second) Judgments 344.

In comment *a* to Restatement (Second) Judgments § 75 the editors describe privity as follows:

> "A person is bound by a judgment in an action to which he is not a party if he is in 'privity' with a party. The relationships denominated by the term 'privity' fall into three general categories. The first includes relationships that are explicitly representative, referred to in §§ 41 and 42. The second includes the array of substantve legal relationships referred to in §§ 45-61, in which one of those involved in the relationship is treated as having the capacity to bind the other to a judgment in an action to which the latter is not a party. The third includes successors in interest to property, referred to in §§ 43-44."

■ We confess the same difficulty in defining privity. It is neither rule nor doctrine; it describes a result. Even so, despite its inherent indeterminacy, we will continue to use the term to describe the effect of various relationships which bind one to a finding necessarily made in a prior case, even though the one so bound was not a party in the earlier case.

■ We first examine whether Reuter, the insured, is collaterally estopped by the finding in the criminal case. In

---

[7] Articulating a rule or law by what it "includes" is sometimes necessary, rarely definitive, and ofttimes unhelpful and confusing rather than enlightening. Generalizations cannot settle concrete law cases.

Even so, one commentator has observed: "In law, however, the evil of lax definitions, though real, has not been without compensation." Gray, *Some Definitions and Questions in Jurisprudence,* 6 Harv L Rev 21, 21 (1893). The "compensation" derived from such definitions is a flexibility to consider factors not available where terms bear a more rigid meaning.

*Casey v. N.W. Security Ins. Co.,* 260 Or 485, 491 P2d 208 (1971), Casey was insured by Northwestern. Casey was driving a car and injured Shelton. Casey was charged with assault with a dangerous weapon and was found guilty. Thereafter, Shelton sued Casey for personal injuries, alleging that Casey intentionally injured Shelton. Northwestern rejected Casey's tender of defense of the action because its·policy excluded coverage of intentionally inflicted injuries. Shelton then filed a two-count amended complaint against Casey alleging (1) an assault and battery theory, and (2), a negligence theory. Northwestern again rejected the tender. Casey retained his own counsel, settled Shelton's claim, and sued Northwestern for his costs of defense against Shelton's claim.

Northwestern claimed that Casey's conviction in the criminal case established that the injury was intentionally inflicted. We agreed, citing *Teitelbaum Furs, Inc. v. Dominion Insurance Company,* 58 Cal 2d 601, 25 Cal Rptr 559, 375 P2d 439 (1962)(conviction of corporation president of theft and filing false insurance claims bars recovery in claim by corporation against insurer), and *Mineo v. Eureka Security Fire & Marine Ins. Co.,* 182 Pa Super 75, 125 A2d 612 (1956) (insured's conviction of arson bars recovery on insurance policy). The opinion states:

> "We hold that Casey's conviction for injuring Shelton conclusively established that the injury was intentionally inflicted and, therefore, Casey's liability was not covered by the defendant. When the defendant was called upon to defend the civil action, it had no duty to defend because it uncontrovertibly had been established that the defendant had no coverage. * * *" 260 Or at 492, 491 P2d at 211.

In *Casey* the question was whether the insured's criminal conviction, which established that the insured's conduct was intentional, precluded coverage on the insured's later claim of coverage. Here, it is the injured person, Bullen, who claims that the policy covered the insured.

Clearly, Reuter's conviction would bar his claim of coverage under the State Farm policy. Under *Casey* (because of the determination in the criminal case) and under the Court of Appeals opinion (see above at 159), the conviction "conclusively established" that the injury was "knowingly" committed.

Is claimant Bullen similarly barred? Because of her legal relationship to Reuter — a relationship which arises from her status as a claimant and potential judgment creditor of Reuter — the answer is "yes."

If Bullen obtained judgment against Reuter under the allegations of her complaint, two avenues against State Farm would be open to her. She could garnish State Farm, ORS 23.230, or she could sue State Farm under ORS 736.320 (now ORS 743.783).

ORS 23.230 permits garnishment of the insurer. It provides:

> "Whenever a judgment debtor has a policy of insurance covering liability, or indemnity for any injury or damage to person or property, which injury or damage constituted the cause of action in which the judgment was rendered, the amount covered by the policy of insurance shall be subject to attachment upon the execution issued upon the judgment."

■  A garnishment gives the judgment creditor plaintiff no greater rights against the garnishee than the judgment debtor defendant has *Weyerhaeuser Co. v. Lynch,* 268 Or 142, 146, 520 P2d 351, 353 (1974); *Coastal Adjustment Bureau, Inc. v. Hutchins,* 299 Or 418, 422, 367 P2d 430, 432 (1962); *Wheeler Lbr. Co. v. Shelton,* 146 Or 550, 556-57, 29 P2d 1013, 1015 (1934); *Graf v. Wilson,* 62 Or 476, 481-82, 125 P 1005, 1007 (1912); *O.R. & N. Co. v. Gates, et al,* 10 Or 514, 515 (1883).

In *Bonney v. Jones,* 249 Or 578, 439 P2d 881 (1968), the plaintiff obtained a judgment for personal injuries against an insured truck operator. After judgment, the plaintiff garnished the insurer. The insurer claimed that the policy did not apply because notice of the accident had not been given as required by the policy. We upheld the insurer's defense because "* * * Oregon has followed the rule that the rights of the tort victim against the insurance carrier are generally no greater than the rights of the insured." As garnishor, Bullen would stand in Reuter's shoes as a claimed creditor of State Farm. In those shoes, she would lose for the reasons stated in *Casey.*

ORS 736.320 (now ORS 743.783) provided:

> "A policy of insurance against loss or damage resulting from accident to or injury suffered by an employe or other

person and for which the person insured is liable, or against loss or damage to property caused by horses or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall contain within such policy a provision substantially as follows: 'Bankruptcy or insolvency of the insured shall not relieve the insurer of any of its obligations hereunder. If any person or his legal representative shall obtain final judgment against the insured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within 30 days after it is rendered, then such person or his legal representatives may proceed against the insurer to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto.' "

■    Although ORS 736.320 (ORS 743.783) does not provide for joinder of a liability insurer as a defendant in the claimant's tort case against the insured, the statute does give a claimant who obtains judgment against the insured a direct right of action against the liability insurer. *Hecht v. James and Farmers Mut. Ins. Co.,* 218 Or 251, 255, 345 P2d 246, 247-48 (1959), states that the statute "was enacted to void a rule that the insolvency of the insured avoided the liability of the insurer." Quoting from *New Jersey Fidelity & Plate Glass Ins. Co. v Clark,* 33 F2d 235, 236 (9th Cir 1929), we stated:

" '* * * It would seem that it was the intent and purpose of [ORS 736.320] to subrogate the rights of the injured party to the rights of the assured upon the contingencies named and to give the injured party all the rights which the insured would have if he had paid the judgment, or if bankruptcy or insolvency had not intervened, including the right to recover costs and interest irrespective of the limits of liability contained in the policy.' "

*Jarvis v. Indemnity Ins. Co.,* 227 Or 508, 363 P2d 740 (1961), involved ORS 736.320. We stated:

"Statutes like ORS 736.320 which permit third-party-beneficiary actions by judgment creditors of insured tortfeasors are held to give the injured plaintiff the same, but not necessarily greater, rights than the insured had under his contract. *Allegretto v. Or. Auto Ins. Co.,* 140 Or 538, 13 P2d 647; *New Jersey Fidelity & Plate Glass Ins. Co. v. Clark,* 33 F2d 235 (9th Cir 1929)." 227 Or at 516, 363 P2d at 744.

*Allegretto v. Or. Auto Ins. Co.,* 140 Or 538, 13 P2d 647 (1932), was an action by a judgment creditor of the insured against the insurer under the predecessor statute to ORS 736.320. There, the insured breached the insurance contract by failing to cooperate in the defense of the original damage action. We upheld the insurer's defense saying:

> "Does this breach of the contract of insurance by the insured preclude plaintiff from the maintenance of this action? Relative to this question, the plaintiff contends that, under the terms of the policy, he had 'a direct, primary right against the insurance company which could not be terminated or affected, regardless of the acts or assured, without the acquiescence or consent of respondent,' * * *.

> "* * * The overwhelming weight of authority establishes that the plaintiff's rights are subrogated to those of the insured. The action is predicated on a contract of insurance and it seems obvious that, if one of the parties thereto has forfeited his rights therein, the plaintiff, who has only a beneficial interest, has no foundation for his action. We test the rights of the plaintiff by whether or not Harris, upon satisfaction of the judgment against him, could have recovered upon the policy. * * *" 140 Or at 534-44, 13 P2d at 649. (Citations omitted.)[8]

Whether Bullen would proceed against State Farm under ORS 736.320 or under ORS 23.230, either as garnishor or subrogee, Bullen's rights against State Farm are no greater than those of Reuter. As garnishor she stands in the shoes of the subrogor. In either case, under *Casey* and the authorities cited above, the finding in the criminal proceeding precludes an inconsistent finding in the case before us.[9]

---

[8] *Allegretto v. Oregon Auto Insurance Co.* 140 Or 538, 13 P2d 647 (1932), was overruled on another point not here relevant in *Bailey v. Universal Underwriters, Ins.,* 258 Or 201, 219, 474 P2d 746, 755, 482 P2d 158 (1971).

[9] State Farm chose to make a preemptive strike by filing a declaratory judgment action against Bullen and Reuter. As plaintiff, it had the burden of proving non-coverage. *First National Bank v. Malady,* 242 Or 353, 358, 408 P2d 724, 726 (1966). It could have waited until Bullen obtained judgment against Reuter and garnished State Farm or waited until Bullen sued State Farm under ORS 736.320 (now ORS 743.783), in which event Bullen would have had the burden of proving coverage.

Had State Farm waited, it could have asserted the finding in the criminal case defensively. The party who asserts collateral estoppel bears the bruden of proving it. *State Farm v. Century Home,* 275 Or 97, 104, 550 P2d 1185, 1188 (1976). The procedural differences between State Farm as plaintiff and State Farm as defendant are not relevant here, for in either case State Farm would have had the burden of

The foregoing discussion aims to point up the derivative nature of Bullen's claim. Her status now is no more or less derivative than it was before the criminal trial, or will be after the trial of her claim against Reuter, or at any other time. The point is that, although her present status is that of a claimant, her future status, insofar as any claim against State Farm is concerned, would be as a judgment creditor of Reuter (if she prevails on her claim against Reuter). Within that status, she is subject to the claims or defenses that the insurer has against the one from whom she derives her claim.

With the finding in the criminal case, Reuter became subject to the collateral estoppel claim that State Farm here asserts. Bullen's derivative status collaterally estops her.

The Court of Appeals held that Bullen was not in privity with either Reuter or the State because she had no control over either the prosecution or the defense of the case. Status, not control, is the determinative factor when the claim is by a successor in interest.[10] *Compare Gaul v. Tourtellotte, supra,* 260 Or at 20-21, 488 P2d at 418-20; *Bahler v. Fletcher, supra,* 257 Or at 20, 474 P2d at 338; and *Wolff v. DuPuis, supra,* 233 Or at 322, 378 P2d at 710.

Our decision is consistent with the holdings of courts that have considered the question.[11] We should add that this decision in no way prevents Bullen from proceeding with her damage claim against Reuter on any theory she can prove.

---

proving collateral estoppel.

We express no opinion as to the result if the civil case had been tried with a finding that Reuter was, at the time of the rape, "suffering from a mental disorder, etc." Then we would have conflicting findings. *State Farm v. Century Home, supra,* is a case involving similar facts.

[10] For the result of the previous case to be finding against the successor in interest, the issue must have been actually litigated. *See* Restatement (Second) Judgments § 27 (1982); *Clemmer v. Hartford Ins. Co.,* 22 Cal 3d 865, 877, 151 Cal Rptr 285, 290, 587 P2d 1098, 1103 (1979). Here there is no suggestion that Reuter failed to assert as vigorous and effective a defense as possible.

[11] These decisions are consistent with the result we reach: *Aetna Life and Cas. Ins. Co. v. Johnson,* 673 P2d 1277, 1279 (Mont 1984); *State Farm Fire & Cas. Co. v. Dominguez,* 131 Cal App 3d 1, 5-6, 182 Cal Rptr 109, 110-11 (1982); *New Jersey Mfrs. Ins. Co. v. Brower,* 161 NJ Super 293, 299, 391 A2d 923, 926-27 (1978). No case has been cited which, under its facts and the posture of this case, reaches a different result. *Compare Clemmer v. Hartford Ins. Co., supra* n 10, 22 Cal 3d at 877, 151 Cal Rptr at 290, 587 P2d at 1103 (collateral estoppel not applied because insured who withdrew insanity defense may not have "had the same interests in fully litigating the issue of the wilfulness of his act [in the criminal case] * * *").

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.