Argued and submitted.June 9, 1986, reversed and remanded for trial March 4, reconsideration denied June 26, petition for review pending 1987

**STATE OF OREGON,**
*Appellant,*

*v.*

**JOE FREEMAN PUGH,**
*Respondent.*

(85-1655; CA A37991)

733 P2d 490

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Marc D. Blackman, Portland, argued the cause for respondent. With him on the brief was Ransom, Blackman & Simson, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

The state appeals an order dismissing an indictment with prejudice. The indictment charges defendant with theft in the first degree, ORS 164.055, and conspiracy to commit theft in the first degree. ORS 161.450.[1] The trial court ruled that a prior determination by a bankruptcy court that defendant did not defraud his insurance company collaterally estopped the state from prosecuting him in this action. The basis for the trial court's ruling was its conclusion that, although the state was not a party in the bankruptcy proceeding, it was nonetheless in privity with the insurance carrier that was a party. We reverse.

In October, 1983, the Lady Christine, a fishing vessel owned by defendant, sank off the Oregon coast. At that time, defendant had initiated a voluntary Chapter 11 bankruptcy proceeding. The vessel was insured by American Universal Insurance Company (American). Soon after the vessel sank, American paid the loss. Two months later, American commenced an adversary proceeding in the pending bankruptcy claiming that defendant had intentionally caused the sinking of the vessel in order to defraud American. The adversary proceeding was tried to the court. The bankruptcy court found that American had failed to prove by clear and convincing evidence that defendant had participated in any fraudulent activity in making the insurance claim or in recovering insurance proceeds for the sinking of the vessel. A final judgment

---

[1] The indictment charges:

### "COUNT 1

"That said [defendant] on or about October 17, 1983, in the County of Coos and State of Oregon, then and there being, did unlawfully and knowingly commit theft of United States currency, of the total value of more than Two Hundred Dollars, the property of American Universal Insurance Company;

### "COUNT 2:

"and as a part of the same act and transaction as set out in Count 1 herein, the said defendant on or about October 17, 1985, in the County of Coos, State of Oregon, then and there being, did unlawfully, and with the intent that conduct constituting the crime of theft punishable as a felony be performed, agree with John Elliott Burgess to cause the performance of the following conduct: that John Elliott Burgess would scuttle and sink an insured vessell [sic], the Lady Christine, a motor fishing vessell [sic] at the request of the said [defendant], so that the said [defendant] could realize insurance proceeds resulting from the sinking of said vessel * * *."

was entered in favor of defendant.[2] Thereafter, defendant was indicted.

An evidentiary hearing was held on defendant's motion to dismiss the indictment. The trial court framed the issue as "how much participation the state had" in the bankruptcy case. Defendant called witnesses and introduced exhibits to show the relationship between American and the state in the conduct of the litigation in the bankruptcy court. Defendant's position was that, because the state essentially controlled American's case against defendant, the state was functionally a party in the adversary proceeding. The trial court came to the conclusion that the state and American were in privity, relying in part on *State Farm Fire & Cas. v. Reuter,* 299 Or 155, 700 P2d 236 (1985). The order of dismissal recites, in part:

"2.   The State of Oregon, plaintiff in this case, is so closely identified with [American] in that prior case, such that it is 'in privity' with said company, by reason of participation in that prior case, through its agents and representatives, which was substantially equivalent to having been a party and by reason of having a legal relationship with respect to [defendant] that is derived from said company * * *."

Defendant first argues that we are bound by the trial court's findings of fact and conclusion that the state and American were in privity, relying on *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968), and its progeny. The scope of appellate review of a collateral estoppel matter was discussed in *State Farm v. Century Home,* 275 Or 97, 105, 550 P2d 1185 (1976). There the court observed that no special deference is given to the trial court's ruling on the evidence, because

"[t]he question on review is whether the evidence is sufficient as a *matter of law* to establish the elements of collateral estoppel.

"* * * * *

"Collateral estoppel involves a policy judgment balancing

---

[2] American appealed the judgment. After the trial court dismissed the indictment and before argument in this court, the bankruptcy judgment was affirmed on appeal. *American Universal Insurance Co. v. Pugh,* No. 85-313-RE (D Or May 7, 1986). We take judicial notice of the district court decision. OEC 202(1). The district court affirmed the ruling of the bankruptcy court that American was not entitled to a jury trial in the fraud action.

the interests of an individual litigant against the administration of justice, and this court reserves the final word as to where the balance is struck in a given case." (Emphasis in original.)

Although *State Farm* is a civil case, its discussion of the scope of review is equally applicable in criminal cases. As in *State Farm,* whether the state is precluded by collateral estoppel from prosecuting defendant is a question of law.

Collateral estoppel has a statutory basis, ORS 43.160, and it has been applied in criminal cases. *State v. George,* 253 Or 458, 455 P2d 609 (1969); *State v. Dewey,* 206 Or 496, 292 P2d 799 (1956). It grants finality only to material issues or determinative facts which were actually or necessarily adjudicated in the prior action. *Jones v. Flanagan,* 270 Or 121, 124, 526 P2d 543 (1974); *State v. Dewey, supra,* 206 Or at 504.

In the present case, the parties and the trial court proceeded on the basis that the prerequisite that the issues be identical had been established. Therefore, the outcome of the case does not depend on ORS 43.160. The question was whether defendant could assert collateral estoppel in a criminal prosecution when the state was not a party in the prior civil action. The trial court decided that, because the state was in privity with American in the civil action, collateral estoppel precluded the criminal prosecution. Because we conclude that the state and American were not in privity, we need not decide whether the doctrine of collateral estoppel in criminal cases is coextensive with the doctrine in civil cases.

Privity is important only insofar as the party to be estopped is concerned. A party cannot be estopped if he was not a party to the prior action, unless he was in privity with a party to the prior action. *State Farm Fire & Cas. v. Reuter, supra,* 299 Or at 160. Privies are those who control the conduct of the first action, those whose interests are represented by a party in the first action and successors in interest to those with derivative claims. *State Farm Fire & Cas. v. Reuter, supra; Gaul v. Toutellotte,* 260 Or 14, 20, 488 P2d 416 (1971).

In the present case the trial court found:

"Although no one party claims that the state was a party to the bankruptcy proceeding and the court does not find the state controlled the case presented by [American], it certainly

was in privity with [American]. It was important to establish the fraud of defendant --- and it attempted to do so with the witnesses upon which the state would rely. They assisted the attorney of [American] in his preparation of the bankruptcy and even though this assistance was no more than that of any witness, it shows that the interest of the state and its victim, [American], were very similar, if not the same.

"The public and — the district attorney, cannot prosecute a theft without a specific victim. There is no theft if there is no victim and so the state's ability to vindicate the rights of society start with harm to a specific victim. * * * In this case, the specific victim has already sought redress and lost. Is there, then, a victim? This court need not give a philosophical answer * * * because the bankruptcy court has held the alleged victim was not defrauded and because the alleged victim received the cooperation of the state's witnesses and fully presented its case in an appropriate forum."

We agree that the state did not "control" the bankruptcy litigation in any sense of the word. *See Rynearson v. Firestone Tire,* 43 Or App 943, 607 P2d 738 (1979), *rev den* 288 Or 527 (1980). The state assisted American in its preparation of the bankruptcy case to the extent that some of the witnesses in the bankruptcy case were state investigators, and the state and American engaged in substantial communication about their respective cases, but that does not place the state in a position of control over the bankruptcy litigation. Neither was the state's interest represented by American in the prior action. American sought recovery of the insurance proceeds that it had paid. The state had no interest in that, nor could it have. Finally, we do not agree with the trial court that the criminal prosecution to vindicate society's interest derived from American's victimization. The criminal prosecution's independence of purpose robs the judgment in the prior action of any collateral estoppel effect in this case. In sum, the state was not in privity with American in the bankruptcy action.

Reversed and remanded for trial.