Argued and submitted March 27, 2006, reversed and remanded January 31, 2007

TERRAIN TAMERS CHIP HAULING, INC.,
*Plaintiff-Appellant,*

*v.*

INSURANCE MARKETING CORPORATION
OF OREGON,
a corporation,
*Defendant-Respondent.*

Douglas County Circuit Court
04CV1367CC; A128616

152 P3d 915

Don Corson argued the cause for appellant. With him on the opening brief were Garrett Epps and The Don Corson Law Firm, P.C. With him on the reply brief were Joel S. DeVore and Luvaas Cobb.

Paul R. Duden argued the cause for respondent. With him on the brief were Eric J. Neiman and Williams, Kastner & Gibbs PLLC.

Before Landau, Presiding Judge, and Schuman and Rosenblum, Judges.

LANDAU, P. J.

### LANDAU, P. J.

At issue in this case is the extent to which a settlement agreement between an injured party and a tortfeasor precludes an action by the tortfeasor against its insurance agent. The trial court concluded that the settlement agreement had preclusive effect and entered summary judgment for the agent. The tortfeasor now appeals, arguing that the settlement agreement does not bar its action against the agent as a matter of law. We agree and therefore reverse and remand.

We state the facts in the light most favorable to the nonmoving party. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Plaintiff Terrain Tamers Chip Hauling, Inc. (Terrain Tamers) purchased insurance for its business through defendant Insurance Marketing Corporation of Oregon (IMCO), an insurance agent. IMCO agreed to obtain for Terrain Tamers an automobile liability insurance policy with policy limits of $2 million and an excess liability policy with limits of $3 million. IMCO procured the automobile liability insurance policy, which was issued by Sentry Select Insurance Company (Sentry). But it neglected to procure the excess liability policy. Meanwhile, one of Terrain Tamers' employees caused an accident that resulted in serious injuries to Larry Woody. Woody and his wife sued Terrain Tamers for the injuries that its employee caused, seeking $18 million in damages. IMCO informed Terrain Tamers that it had failed to obtain the excess liability coverage.

Terrain Tamers and the Woodys settled the personal injury claim. Under the terms of the settlement agreement, Terrain Tamers stipulated to the entry of a judgment against it in the amount of $5.75 million. Sentry paid the full $2 million policy limits to the Woodys in partial satisfaction of that judgment. Terrain Tamers agreed to sue IMCO for failing to procure the $3 million in excess liability coverage and further agreed to grant a security interest in favor of the Woodys, effective at the time of the agreement, in any recovery that Terrain Tamers obtains from IMCO on such a claim. In exchange, the Woodys agreed not to "take any steps to

enforce or execute" the judgment against Terrain Tamers "during the pendency of any action" against IMCO and to execute a satisfaction of judgment "upon final completion" of that action.

Terrain Tamers then initiated this action against IMCO for negligence and breach of contract. Terrain Tamers alleged that IMCO was negligent in failing to procure the requested $3 million in excess liability insurance and breached an agreement to procure that insurance.

IMCO moved for summary judgment. IMCO contended that, by virtue of the settlement with the Woodys, Terrain Tamers no longer had any further liability to them. As a result, IMCO argued, Terrain Tamers "has no damage which is cognizable by a liability insurance policy." According to IMCO, the settlement agreement completely insulated Terrain Tamers from any liability in excess of the $2 million that Sentry already had paid. Consequently, there is nothing left for IMCO to insure. In support of its motion, IMCO relied on this court's opinion in *Oregon Mutual Ins. Co. v. Gibson*, 88 Or App 574, 746 P2d 245 (1987). Terrain Tamers argued that *Oregon Mutual Ins. Co.* does not apply because, among other things, unlike the agreement at issue in that case, the settlement agreement in this case does not unambiguously and unconditionally release Terrain Tamers from further liability. The trial court agreed with IMCO, granted the motion for summary judgment, and entered judgment accordingly.

On appeal, Terrain Tamers argues that the trial court erred in granting IMCO's summary judgment motion for at least two reasons: (1) *Oregon Mutual Ins. Co.* is not controlling because the agreement in this case does not unambiguously and unconditionally release Terrain Tamers from further liability; and (2), in any event, *Oregon Mutual Ins. Co.* has been effectively overruled by the enactment of ORS 31.825. We need not address the latter contention because we find the former to be dispositive.

To understand the significance of *Oregon Mutual Ins. Co.* requires a brief digression. In *Stubblefield v. St. Paul Fire & Marine*, 267 Or 397, 517 P2d 262 (1973), the plaintiff sued his wife's doctor for alienation of affection and criminal conversation. The doctor was insured, but his insurer refused

to defend. The plaintiff and the doctor eventually settled. The doctor agreed that the plaintiff would obtain a judgment against him in the amount of $50,000. The doctor then agreed to pay $5,000 to the plaintiff and assigned to the plaintiff his claim against the insurer for all amounts in excess of $5,000 due from the insurer under the indemnity provision of the policy that required the insurer to indemnify the insured "for all sums which the insured shall be legally obligated to pay as damages" for personal injury. In exchange, the plaintiff entered into a covenant not to execute on the judgment for any amount in excess of $5,000. The plaintiff then sued the doctor's insurer, but the trial court concluded that the insurer had no obligation to pay. The Supreme Court affirmed, explaining that the indemnity provision of the doctor's insurance policy obligated the insurer to pay only "sums which the insured shall be *legally obligated to pay.*" *Id.* at 400 (emphasis in original). The court reasoned that, because the settlement agreement obligated the insured—the doctor—to pay no more than $5,000, the plaintiff acquired no enforceable rights against the insurer. *Id.* at 400-01.

*Stubblefield* was followed by—and further explained in—*Lancaster v. Royal Ins. Co. of America,* 302 Or 62, 726 P2d 371 (1986). In that case, the plaintiff was injured in an automobile accident. He sued the defendant tortfeasor, along with the defendant's employer and its insurer. The plaintiff and the defendant settled. The defendant agreed that the plaintiff would enter a judgment against the defendant for approximately $40,000. The defendant assigned his rights, if any, against his employer and its insurer under the indemnity provision of the policy that required the insurer to indemnify the employer for "all sums the insured *legally must pay as damages*" because of personal injury. *Id.* at 64 (emphasis in original). In exchange, the plaintiff entered into a covenant not to execute "personally" on the judgment against the defendant. *Id.* The plaintiff then sued the insurer. The insurer moved for, and obtained, summary judgment in its favor, based on *Stubblefield.* The Supreme Court, however, reversed. The court explained that the key to *Stubblefield* was the fact that, in that case, there was "an *unconditional* covenant" not to execute, "so that the insured was never legally obligated to pay any amount" above what

he already had paid. *Lancaster*, 302 Or at 66 (emphasis in original). Whether a given settlement agreement contains such an unconditional covenant, the court stated, depends on its wording construed in light of the usual rules of contract interpretation. *Id.* at 67. The settlement agreement at issue in that case, the court observed, was not unambiguous; it contained a covenant not to execute "personally" against the defendant, which the court concluded could mean either that the plaintiff would not execute against the defendant at all or that the plaintiff would not execute as to the defendant's personal property (as opposed to his real property). *Id.* at 68. Under the circumstances, the court concluded, it was error to grant summary judgment in favor of the insurer. *Id.* at 68-69.

That brings us to *Oregon Mutual Ins. Co.* In that case, the plaintiffs were injured in a dune buggy accident. They sued the defendant driver, who was insured. The plaintiffs and the defendant settled. The defendant agreed that the plaintiffs would enter judgment against him for $1.5 million. The defendant's insurer agreed to pay $1 million to the plaintiffs. The defendant then assigned to the plaintiffs his claims against his insurance agents for "failure to procure adequate insurance." *Id.* at 576. In exchange, the plaintiffs entered into covenants not to execute on the judgment beyond the $1 million that the defendant's insurer agreed to pay. The plaintiffs then sued the insurance agents on the claims for failure to procure adequate insurance. *Id.* The trial court entered summary judgment for the defendants, and we affirmed. We did so on the ground that the settlement agreement "unambiguously" and "unconditionally" insulated the defendant from further liability. *Id.* at 578. Under *Stubblefield*, we concluded, that meant that, even if the insurance agents had procured additional insurance, there would have been no additional coverage. *Id.*

For obvious reasons, IMCO contends that *Oregon Mutual Ins. Co.* controls the outcome of this appeal. We are not persuaded that the case is controlling, however.

At the outset, it is debatable whether *Oregon Mutual Ins. Co.* correctly states the law. As we have noted, *Stubblefield* was expressly predicated on an assignment of a claim for indemnity, pursuant to an indemnity clause in

the underlying insurance policy that obligated the insurer to indemnify the insured only for sums that the insured was legally obligated to pay. 267 Or at 401. *Oregon Mutual Ins. Co.* involved no such assignment of a duty to indemnify. In subsequent cases, that is precisely how we have characterized *Stubblefield*, although without explicitly mentioning *Oregon Mutual Ins. Co. See, e.g., Holloway v. Republic Indemnity Co. of America*, 201 Or App 376, 119 P3d 239 (2005), *rev'd on other grounds*, 341 Or 642, 147 P3d 329 (2006) (*"Stubblefield* and its progeny apply only to an assignment of the duty to indemnify."); *Stumpf v. Continental Casualty Co.*, 102 Or App 302, 313, 794 P2d 1228 (1990) ("The results in [*Stubblefield* and *Lancaster*], however, were dictated by the language of the indemnity clauses from which they arose.").

We need not resolve the tension between *Oregon Mutual Ins. Co.* and our later cases, however. Even assuming that *Oregon Mutual Ins. Co.* remains good law, this case is plainly distinguishable from it. The key lies in recalling the Supreme Court's explanation in *Lancaster* that, for the rule of *Stubblefield* to apply, the settlement agreement must "unambiguously" and "unconditionally" eliminate any liability for which insurance coverage might otherwise be triggered. 302 Or at 66-67. Thus, in *Oregon Mutual Ins. Co.*, we concluded that there could be no claim for negligent failure to procure insurance coverage precisely because there was an "unambiguous" and "unconditional" assignment of rights and covenant not to execute that eliminated any further liability. 88 Or App at 578.

There is no such unambiguous agreement in this case. To begin with, it is not entirely clear that there is an assignment of any sort, much less an assignment of an indemnity claim. Terrain Tamers did not assign its rights against IMCO; instead, it agreed to pursue a claim against IMCO on its own and to pay the Woodys whatever it recovered. Aside from that, it is not clear that the covenant not to execute in this case is unconditional or that it completely absolves Terrain Tamers of all further liability. The settlement states that the Woodys will not execute on the judgment only during the pendency of an action against IMCO and that a satisfaction of judgment will be entered only upon

payment of any proceeds from the action against IMCO. The covenant not to execute is at least arguably conditional; that is, it is conditioned upon the good faith prosecution of an action against IMCO and the payment of any proceeds from that action. Should Terrain Tamers fail to comply with either of those conditions, it is arguable that Terrain Tamers and its assets would be subject to the Woodys' execution of the judgment for the full amount. Thus, we cannot say that, under the terms of the agreement, Terrain Tamers, like the insured defendant in *Oregon Mutual Ins. Co.* could "never be required to pay any more" than what it already has paid. 88 Or App at 578.

The settlement agreement in this case is thus like the one in *Lancaster*, it does not unambiguously and unconditionally eliminate Terrain Tamers' further liability to the Woodys. Consequently, *Stubblefield* and *Oregon Mutual Ins. Co.* do not prevent Terrain Tamers from pursuing its claim, and the trial court erred in reaching a contrary conclusion.

Reversed and remanded.