Argued and submitted November 8, 2011, affirmed February 27, petition for review allowed July 26, 2013 (353 Or 867)

BROWNSTONE HOMES CONDOMINIUM
ASSOCIATION,
an Oregon non-profit corporation,
*Plaintiff-Appellant,*

*v.*

BROWNSTONE FOREST HEIGHTS, LLC,
an Oregon limited liability company, et al.,
*Defendants,*

*and*

CAPITOL SPECIALITY INSURANCE CO.,
*Garnishee-Respondent.*

Multnomah County Circuit Court
060606804; A145740

298 P3d 1228

Peter R. Chamberlain, Judge pro tempore.

Thomas W. Brown argued the cause for appellant. With him on the briefs was Cosgrave Vergeer Kester LLP.

Brian C. Hickman argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

This case involves an insurance-related dispute arising out of construction defect litigation. Plaintiff Brownstone Homes Condominium Association, an assignee of the insured defendant, A&T Siding, Inc. (A&T), appeals, challenging the trial court's determination that plaintiff was not entitled to garnish the proceeds of an insurance policy issued by A&T's insurer, Capitol Specialty Insurance Co. (Capitol). The trial court's ruling was based on an application of the holding in *Stubblefield v. St. Paul Fire & Marine*, 267 Or 397, 400-01, 517 P2d 262 (1973) ("the *Stubblefield* rule").[1] Plaintiff appeals, contending, variously, that (1) the *Stubblefield* rule is inapposite in a garnishment proceeding pursuant to ORS 18.352 and ORS 742.031; (2) in the circumstances presented here, ORS 31.825 abrogates the operation of the *Stubblefield* rule; and (3) the *Stubblefield* rule is inapposite because the settlement agreement did not "unambiguously and unconditionally" relieve A&T from its obligation to pay the judgment. For the reasons amplified below, we reject each of plaintiff's arguments. Accordingly, we affirm.

Where, as here, the material facts are undisputed, we review the trial court's grant of summary judgment for legal error. *Povey v. City of Mosier*, 220 Or App 552, 554, 188 P3d 321, *rev den*, 345 Or 460 (2008). We also review the trial court's construction of ORS 31.825 for legal error. *Horton v. Western Protector Ins. Co.*, 217 Or App 443, 448, 176 P3d 419 (2008).

This case derives from construction defect litigation, in which the plaintiff association filed claims against defendant A&T, a siding subcontractor, for breach of contract

---

[1] As we amplify below, the circumstances in *Stubblefield* were closely analogous to those presented here, involving similar insurance policy language (under which the insurer agreed to pay those sums that the insured was "legally obligated to pay"), as well as a settlement agreement by which the tortfeasor insured assigned its rights under the policy to the plaintiff and the plaintiff agreed not to execute on a stipulated judgment against the insured. The Supreme Court concluded that those circumstances precluded the plaintiff's subsequent action, based on the assignment, against the insurer. The Supreme Court reasoned as follows: (a) given the operation of the nonexecution covenant, the insured assignor was no longer "legally obligated to pay" the plaintiff assignee; (b) thus, the insurer had no payment obligation to the assignor insured; and (c) consequently, the plaintiff assignee "acquired no rights which are enforceable by it" against the insurer. 267 Or at 401.

and negligence. A&T was insured by two companies, Zurich and Capitol. A&T's policy with Capitol provided, in relevant part:

> "[Capitol] will pay those sums that the insured becomes *legally obligated to pay as damages* because of 'bodily injury' or 'property damage' to which this insurance applies."

(Emphasis added.)

On March 14, 2008, plaintiff, A&T, and Zurich entered into a settlement agreement. A&T agreed to stipulate to a judgment against it in favor of plaintiff for $2 million. Zurich agreed to pay plaintiff $900,000 on behalf of A&T. Plaintiff agreed that

> "in no event will it execute upon or permit the execution of the stipulated judgment against A&T or its assets or [Zurich]. [Plaintiff] shall be entitled to seek recovery of the unexecuted portion of [the stipulated judgment] against [Capitol] * * *."

A&T assigned to plaintiff any claims that A&T had against Capitol under the above-quoted policy. In addition, A&T agreed to "reasonably and in good faith cooperate with [plaintiff] in pursuing the rights and claims assigned."

A stipulated general judgment and money award was entered on November 13, 2008. Plaintiff subsequently served a writ of garnishment on Capitol pursuant to ORS 18.352,[2] alleging that Capitol was liable for the unpaid portion of the stipulated judgment—approximately $1.1 million. Capitol disputed liability and eventually moved for summary judgment, arguing, as pertinent here, that, under the *Stubblefield* rule, the settlement agreement extinguished Capitol's potential liability because Zurich had already satisfied what A&T was "legally obligated to pay." Capitol

---

[2] ORS 18.352 provides:

"Whenever a judgment debtor has a policy of insurance covering liability, or indemnity for any injury or damage to person or property, which injury or damage constituted the cause of action in which the judgment was rendered, the amount covered by the policy of insurance shall be subject to attachment upon the execution issued upon the judgment."

argued that ORS 31.825[3] did not abrogate the application of the *Stubblefield* rule because that statute requires that the assignment occur after entry of judgment and A&T had assigned its rights to plaintiff before a judgment "had been entered."

The trial court agreed with Capitol and granted the motion for summary judgment in a post-judgment order and letter opinion. The court reasoned that the *Stubblefield* rule was "fatal to plaintiff's claims," and that ORS 31.825 was inapplicable because the assignment here "occurred long before the judgment was entered."

Plaintiff appeals,[4] contending, variously, that (1) the *Stubblefield* rule is inapposite in a garnishment proceeding pursuant to ORS 18.352 and ORS 742.031;[5] (2) in the circumstances presented here, ORS 31.825 abrogates the operation of the *Stubblefield* rule; and (3) the *Stubblefield* rule is inapposite because the settlement agreement did not

---

[3] ORS 31.825 provides:

"A defendant in a tort action against whom a judgment has been rendered may assign any cause of action that defendant has against the defendant's insurer as a result of the judgment to the plaintiff in whose favor the judgment has been entered. That assignment and any release or covenant given for the assignment shall not extinguish the cause of action against the insurer unless the assignment specifically so provides."

[4] On July 29, 2010, the Appellate Commissioner determined that the trial court's order in this case was appealable. The commissioner reasoned that, "[a]lthough the order purports to grant 'summary judgment,' it, in fact, simply sustains [Capitol's] objection to the garnishment." As such, the order is appealable under ORS 19.205(3) because it was rendered after entry of the general judgment and "affect[s] a substantial right." The parties do not challenge the commissioner's jurisdictional determination, and we do not revisit it.

[5] ORS 742.031 provides:

"A policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by horses or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall contain within such policy a provision substantially as follows: 'Bankruptcy or insolvency of the insured shall not relieve the insurer of any of its obligations hereunder. If any person or legal representative of the person shall obtain final judgment against the insured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within 30 days after it is rendered, then such person or legal representatives of the person may proceed against the insurer to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto.'"

"unambiguously and unconditionally" relieve A&T from its obligation to pay the judgment.

Capitol remonstrates that the *Stubblefield* rule applies to garnishment actions because plaintiff, as a judgment creditor, "steps into the shoes" of the judgment debtor, A&T, for purposes of prosecuting claims against Capitol and, thus, remains subject to *Stubblefield*'s constraints.[6] Capitol further reiterates its assertion that ORS 31.825 is inapposite here because plaintiff's covenant not to execute the stipulated judgment against A&T antedated the entry of the stipulated judgment. Finally, Capitol asserts that, contrary to plaintiff's characterization, the nonexecution covenant was unambiguously unconditional.

We address each of plaintiff's alternative arguments in turn, and ultimately conclude that plaintiff does not have any enforceable claims against Capitol. Accordingly, the trial court properly granted summary judgment.

We begin with *Stubblefield*. There, the plaintiff and the insured defendant entered into a settlement agreement in a tort action, which included a stipulated judgment against the defendant in the amount of $50,000. 267 Or at 398. As part of the settlement, the plaintiff also agreed to a covenant not to execute the judgment against the insured for any amount over $5,000, which the insured agreed to pay. In return, the insured assigned to the plaintiff all claims against his insurance company in excess of $5,000 arising out of his policy—a policy that provided that "the Company will indemnify the Insured for all sums *which the Insured shall be legally obligated to pay as damages and expenses* * * *." *Id.* at 400 (emphasis added). The plaintiff then filed an action against the insurer. The insurer prevailed in the trial court, and the plaintiff appealed. *Id.* at 398-99.

_____

[6] Capitol also asserts that plaintiff's invocation of ORS 742.031 on appeal is "unpreserved" in that plaintiff did not refer to that statute before the trial court. That threshold response is unavailing in that, as we understand it, plaintiff is merely referring to ORS 742.031 as instructive context for our construction and application of ORS 18.352 in these circumstances, *see generally Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998) ("[T]he parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law."). In all events, plaintiff does not advance on appeal any contention as to the operation of ORS 742.031 that differs qualitatively from its argument as to ORS 18.352.

The Supreme Court affirmed, concluding that the result of the nonexecution covenant was that the only sum that the insured was "legally obligated to pay" was $5,000. *Id.* at 400. That amount was expressly excluded from the assignment. Consequently, the court determined that, under the terms of the assignment, "plaintiff acquired no rights which [were] enforceable" against the insurer. *Id.* at 400-01. *See also Lancaster v. Royal Ins. Co. of America*, 302 Or 62, 726 P2d 371 (1986) (reversing the allowance of summary judgment for the insurer, which had been based on *Stubblefield*, because ambiguity in the predicate non-execution covenant gave rise to material issues of fact as to whether the insured remained liable under the agreement); *Oregon Mutual Ins. Co. v. Gibson*, 88 Or App 574, 746 P2d 245 (1987) (applying *Stubblefield*, in a declaratory relief action, concluding that the nonexecution covenant unconditionally insulated the assignor insured from liability and, as a result, the insurer was not liable to the assignee).

While forthrightly acknowledging *Stubblefield*'s reasoning and result, plaintiff first asserts that *Stubblefield* is not controlling here because its rationale is categorically inapposite to garnishment proceedings. Specifically, plaintiff posits that, because plaintiff may proceed directly against Capitol under ORS 18.352 and ORS 742.031, plaintiff's claim against Capitol is dependent neither on A&T's rights against Capitol nor on the viability of the assignment of those rights to plaintiff. In response, Capitol invokes *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 700 P2d 236 (1985).

In *Reuter*, after concluding that the defendant insured had no enforceable claims under the terms of his insurance policy, the court considered whether the plaintiff in a tort action against the insured would similarly be barred from asserting coverage. 299 Or at 164. The court reasoned that, if the plaintiff eventually prevailed in her tort action, "two avenues against [the insurer] would be open to her. She could garnish [the insurer], [*former*] ORS 23.230 [*renumbered as* ORS 18.352 (2003)], or she could sue [the insurer] under [*former*] ORS 736.320 [*renumbered as* ORS 742.031 (1989)]." *Id.* The court concluded that "[a] garnishment gives the judgment creditor plaintiff no

greater rights against the garnishee than the judgment debtor defendant has." *Id.* Thus, the court concluded:

> "Whether [the plaintiff] would proceed against [the insurer] under ORS [742.031] or under ORS [18.352], either as garnishor or subrogee, [the plaintiff's] rights against [the insurer] are no greater than those of [the defendant insured]. As garnishor [the plaintiff] stands in the shoes of the subrogor."

*Id.* at 166.

We agree with Capitol that *Reuter* preempts and precludes plaintiff's garnishment-based distinction of *Stubblefield*. Consistently with *Reuter*, plaintiff's rights as a garnishor against Capitol are, at most, no greater than those of its judgment debtor, A&T, under the terms of the insurance policy. As noted, under the policy, Capitol is liable to A&T only for "those sums that [A&T] becomes legally obligated to pay"—and, under *Stubblefield*, Capitol has no enforceable payment obligations to A&T (and, derivatively, plaintiff). Thus, in this circumstance, there is no material functional difference in the relationship between an assignee and an assignor, as in *Stubblefield*, and between a garnishor and a judgment debtor, as in *Reuter*. In sum, under *Stubblefield* and *Reuter*, plaintiff—"stand[ing] in [A&T's] shoes"—has "no rights which are enforceable by it" against Capitol.[7] *Stubblefield*, 267 Or at 401.

Plaintiff next contends that ORS 31.825 abrogates the operation of the *Stubblefield* rule. ORS 31.825 provides:

> "A defendant in a tort action against whom a judgment has been rendered may assign any cause of action that defendant has against the defendant's insurer as a result of the judgment to the plaintiff in whose favor the judgment has been entered. That assignment and any release or covenant given for the assignment shall not extinguish the

---

[7] That result would obtain regardless of whether plaintiff proceeded before the trial court solely under ORS 18.352 or under both ORS 18.352 and ORS 742.031. *See Reuter*, 299 Or at 166 ("Whether [the plaintiff] would proceed against [the insurer] under ORS [742.031] or under ORS [18.352], either as garnishor or subrogee, [the plaintiff's] rights against [the insurer] are no greater than those of [the defendant insured]. As garnishor [the plaintiff] stands in the shoes of the subrogor.").

cause of action against the insurer unless the assignment specifically so provides."

The parties' dispute with respect to the applicability of that statute centers on whether the statute requires a particular sequence of events. Specifically, plaintiff argues that "[n]othing in the text of the statute says that any 'assignment and any covenant or release' must be executed *after* the 'judgment rendered' for the statute to apply." (Emphasis in original.) Capitol counters that, by its plain language, ORS 31.825 applies only "if the judgment has been entered *prior to* execution of the Settlement Agreement and its unconditional covenant not to execute." (Emphasis in original.) We agree with Capitol.

ORS 31.825 refers to the judgment using the present perfect verb tense: "[a] defendant in a tort action against whom a judgment *has been rendered* may assign"; "to the plaintiff in whose favor the judgment *has been entered.*" That tense necessarily connotes that the judgment must be entered before the assignment of rights. We conclude that, by its terms, ORS 31.825 preserves assigned rights against an insurer that "result from a judgment" that "has been entered" prior to the assignment. *Accord Burdge v. Palmateer,* 338 Or 490, 498 n 5, 112 P3d 320 (2005) ("'*Has been convicted*' is present perfect tense, indicating that the earlier conviction may have taken place at any time before the present—the present being the time of sentencing for the later conviction[.]" (Emphasis added.)); *State v. Root,* 202 Or App 491, 494-96, 123 P3d 281 (2005), *rev den,* 340 Or 308 (2006) (concluding that "*has * * * been advised* by his or her attending physician the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition," for purposes of an affirmative defense under ORS 475.319(1), "can only mean at the latest some time prior to arrest" (emphasis added)).

That construction of ORS 31.825 comports with the statute's legislative history. For example, and with particular respect to the timing feature, a proponent of the legislation, Steve Piucci of the Oregon Trial Lawyers Association, responded in the affirmative to committee counsel's question regarding whether a judgment must precede an assignment:

"[Committee Counsel]:   But a judgment under the under-lying coverage is a precursor to getting the assignment[?]

"[Piucci]:   That is correct."

Tape Recording, Senate Committee on Judiciary, SB 519, Mar 27, 1989, Tape 82, Side A.

We note finally that our construction here of the timing feature of ORS 31.825 comports with our prior under-standing of the statute's operation, as expressed in *Portland School Dist. v. Great American Ins. Co.*, 241 Or App 161, 249 P3d 148, *rev den*, 350 Or 573 (2011). There, the insurer had argued that ORS 31.825 was inapposite "because the assignment and release were agreed to * * * before any suit was filed against the contractor." *Id.* at 174-75. We concluded that the timing of the assignment in relation to the entry of judgment did not bar the application of ORS 31.825, because the settlement agreement required a specific sequence of performance that was consistent with ORS 31.825—*viz.*, the assignment "was conditioned upon the filing of a tort action and entry of judgment against the [defendant]," hence, "until the stipulated judgment was entered, the [plaintiff] had no enforceable right to assignment and the [defendant] had no enforceable right to release from liability to the [plaintiff]." 241 Or App at 175.

We concluded:

"[ORS 31.825] expressly permits a defendant in a tort action who has received an adverse judgment to assign to the plaintiff in that action any cause of action that the defendant has against the defendant's insurer as a result of the judgment. Here, at the time the [plaintiff] and the [defendant] entered into the 'Assignment of Claims and Covenant Not to Execute' the [defendant] was the defendant in an action for negligence brought by the [plaintiff], and *a judgment in favor of the [plaintiff] had been entered in that case.* As a result of that judgment, the [defendant] had a cause of action against [the insurer] for breach of the insurance contract, which the [defendant] then assigned to the [plaintiff]."

241 Or App at 174 (emphasis added).

ORS 31.825 does not apply here, because the order of events in this case does not conform to the statutorily prescribed sequence. Here, the assignment in the March 14, 2008, settlement agreement predated the stipulated judgment that was entered November 13, 2008. Because the judgment had not "been entered" at the time of the assignment, ORS 31.825 does not operate, in contravention of *Stubblefield*'s otherwise controlling principle, to preserve plaintiff's claims against Capitol.

We turn to plaintiff's third and final alternative argument. Plaintiff invokes *Lancaster*, 302 Or 62, for the proposition that a qualified covenant not to execute does not fully extinguish the legal obligation of the insured and, consequently, does not extinguish the liability of the insurer by application of the *Stubblefield* rule. Plaintiff argues that the nonexecution covenant here was materially qualified by A&T's agreement noted above, 255 Or App at 393, to "reasonably and in good faith cooperate with [plaintiff] in pursuing the rights and claims assigned."

Capitol responds—and we agree—that *Lancaster* is materially distinguishable and that the nonexecution covenant between plaintiff and A&T was unambiguously unqualified. In *Lancaster*, the plaintiff in a tort action entered into a settlement agreement with the defendant insured, which provided that "plaintiff agreed not to execute 'personally' on a judgment against [the defendant] in return for [the defendant's] assignment of his rights, if any, against [the insurance company]." 302 Or at 64. The pertinent portion of the defendant's insurance policy provided that the insurer would "pay all sums the insured *legally must pay as damages*." *Id.* (emphasis in *Lancaster*). The defendant insured stipulated to a judgment in favor of the plaintiff, who then sued the insurer for the amount of the stipulated judgment. The trial court granted summary judgment in favor of the insurer. The Supreme Court reversed, explaining that the term "personally" was ambiguous in that it

"could have meant * * * that plaintiff could not execute against [the defendant's] personal property but that [the defendant] remained liable as to his real property, or it

could have meant that plaintiff would not execute against [the defendant] but would execute against the insurer."

*Id.* at 68 (footnote omitted). The court concluded that that ambiguity created a factual issue, which precluded summary judgment—*viz.*, whether the insured could be legally obligated to the plaintiff under the terms of the nonexecution covenant. *Id.* at 68-69.

In the predicate nonexecution covenant here, plaintiff agreed that "*in no event* will it execute upon or permit the execution of the stipulated judgment against A&T or its assets." (Emphasis added.) Plaintiff's agreement not to execute the judgment against A&T was not conditioned upon A&T's continued cooperation; rather the nonexecution agreement was unqualified.[8]

In sum, the operative nonexecution covenant unconditionally released A&T from any liability to plaintiff. As a result, under the *Stubblefield* rule, in conjunction with *Reuter*, plaintiffs have no enforceable claims against Capitol under A&T's insurance policy.

Affirmed.

---

[8] In that regard, this case is dispositively distinguishable from *Terrain Tamers v. Insurance Marketing Corp.*, 210 Or App 534, 152 P3d 915, *rev den*, 343 Or 115 (2007), which plaintiff invokes. There, we concluded that a covenant not to execute was "at least arguably conditional," in part, because

"it is conditioned upon the [insured's] good faith prosecution of an action against [the insurer] and the payment of any proceeds from that action. Should [the defendant insured] fail to comply with either of those conditions, it is arguable that [the insured] and its assets would be subject to the [plaintiffs'] execution of the judgment for the full amount."

*Id.* at 541.

Here, unlike in *Terrain Tamers*, A&T did not agree to pursue claims against Capitol; it merely assigned to plaintiff any claims that it might have against Capitol. Even more significantly, in *Terrain Tamers*, the nonexecution covenant explicitly provided that the plaintiffs would not execute the judgment "only during the pendency of an action against [the insurer] and that a satisfaction of judgment [would] be entered only upon payment of any proceeds from the action against [the insurer]." *Id.* at 540-41. Plaintiff here did not similarly condition its covenant not to execute the judgment against A&T.