Submitted September 18, 2013, reversed and remanded February 20, petition for review denied October 23, 2014 (356 Or 400)

Robert LEACH,
*Plaintiff-Appellant,*

*v.*

SCOTTSDALE INDEMNITY COMPANY,
dba Scottsdale Insurance Company,
*Defendant-Respondent.*

Marion County Circuit Court
11C13379; A151680

323 P3d 337

Beau D. Harlan and Harlan Law Firm filed the briefs for appellant.

Michael A. Lehner and Lehner & Rodrigues, P.C., filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.

LAGESEN, J.

## LAGESEN, J.

Plaintiff Robert Leach appeals from a final judgment dismissing with prejudice his claims against his insurance company, defendant Scottsdale Indemnity Company (Scottsdale). Leach alleged that Scottsdale breached its duties to defend and indemnify him in connection with Thomas Warberg's personal injury action for injuries sustained as a result of a collision that occurred during a practice session at the motocross track operated by Leach. The trial court granted summary judgment in favor of Scottsdale on both alleged breaches on the ground that the policy did not provide coverage for bodily injuries sustained by motorcycle riders on Leach's track. In addition, the court ruled that Scottsdale was entitled to summary judgment on the alleged breach of the duty to indemnify on the ground that, under the rule of law announced in *Stubblefield v. St. Paul Fire & Marine*, 267 Or 397, 517 P2d 262 (1973), a covenant not to execute by Warberg in favor of Leach extinguished any obligation of Scottsdale to indemnify Leach. We reverse and remand.

## I.  BACKGROUND

Leach leased, designed, and operated a motocross course at the Fair and Expo Center in Salem, Oregon,[1] under the name "Bob Leach Enterprises." Scottsdale insured the premises under a commercial general liability policy. The policy provided for $1,000,000 in "bodily injury" and "property damage" liability coverage. It stated that Scottsdale

"will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."

However, the policy also contained an endorsement exclusion—titled the "Athletic or Sports Participants" exclusion ("Athletic Participant" exclusion)—that limited the scope of its coverage. The exclusion provided that "this insurance does not apply to 'bodily injury' to any person while practicing for or

---

[1] The Fair and Expo Center is owned by the State of Oregon, but Leach leased the premises and designed the motocross course located on site.

participating in any sports or athletic contest or exhibition that you sponsor."

Leach routinely held both motocross practice sessions and motocross races at the track. Generally, Leach would hold races on Friday and Saturday nights, or occasionally on Saturday and Sunday, and he would have practice sessions on Wednesday evenings and on those Sundays where no races were held. During one practice session, a rider lost control of the motorcycle that he was riding, and entered Warberg's lane and collided with him. Warberg was seriously injured.

Warberg sued Leach, the rider who caused the collision, and others in *Warberg v. Fleck, et al. (Warberg I)*. Warberg sought economic damages for medical expenses in an amount not less than $100,000; economic damages for lost wages or salary in an amount not less than $1,000,000; and noneconomic damages in the amount of $5,000,000. Leach tendered the complaint to Scottsdale. Scottsdale denied coverage and refused to defend or indemnify Leach in connection with the suit on the ground that "Scottsdale does not owe a duty to defend or indemnify its insured, Bob Leach Enterprises, because the 'Athletic Or Sports Participant' Exclusion is applicable to bar coverage."

After Leach unsuccessfully moved for summary judgment, Warberg settled with Leach. In accordance with the settlement, the trial court entered a stipulated judgment against Leach in the amount of $1,500,000. After judgment was entered, Leach and Warberg entered into an "Assignment and Covenant Not to Execute" agreement. Under the agreement,

"pursuant to ORS 31.825, Leach * * * assign[ed] all his rights of recovery, choses in action, and enforcement of obligations between himself and Leach's Insurance Policy holder, Scottsdale Indemnity Company, and against any and all other persons having any responsibility or liability for the Judgment entered in favor of Warberg by Leach * * *."

(Emphasis omitted.) In turn, Warberg "agree[d] not to enforce the Judgment against Leach by execution or any other manner against Leach in exchange for the Assignment."

Pursuant to the assignment, Warberg then sued Scottsdale for breach of contract in *Warberg v. Scottsdale* (*Warberg II*). The complaint alleged that Scottsdale had failed to defend and indemnify Leach in connection with Warberg's original lawsuit in contravention of its obligation under the policy. Scottsdale moved for summary judgment on the grounds that (1) it had no duty, as a matter of law, to defend Leach against Warberg's original claim because its policy "specifically excluded bodily injuries suffered while practicing sports or athletics"; and (2) it had no present duty to indemnify because, among other reasons, the policy had an anti-assignment clause that precluded assignment without written consent from Scottsdale.

The trial court ruled on the motion in a letter opinion. The letter opinion concluded that issues of fact existed as to whether Warberg's injuries fell within the "Athletic Participant" exclusion, but concluded that the anti-assignment clause barred Warberg's action against Scottsdale. The trial court then entered an order stating that Scottsdale was entitled to summary judgment because the anti-assignment clause barred Warberg's action.

Leach then filed the present action, reiterating the claims alleged in *Warberg II*: that Scottsdale breached its duties under the policy when it refused to defend or indemnify Leach in connection with *Warberg I*. Scottsdale moved for summary judgment, again asserting that it had no duty to defend or indemnify Leach because Warberg's injuries fell within the "Athletic Participant" exclusion. Scottsdale also asserted that Warberg's covenant not to execute against Leach eliminated any duty of Scottsdale to indemnify Leach under the rule of law announced in *Stubblefield*. The trial court granted the motion and entered a general judgment dismissing all of Leach's claims with prejudice.

Leach timely appealed. On appeal, Leach assigns error to the trial court's grant of summary judgment to Scottsdale. Leach contends that (1) in the light of the *Warberg II* court's conclusion in its letter opinion that there were factual disputes as to whether the "Athletic Participant" exclusion bars coverage for liability for Warberg's injuries, issue preclusion barred the grant of summary judgment in Scottsdale's

favor; (2) the undisputed facts do not demonstrate as a matter of law that Warberg's injuries are excluded from coverage by the "Athletic Participant" exclusion; and (3) *Stubblefield* does not establish as a matter of law that the covenant not to execute eliminated Scottsdale's duty to indemnify.

## II. STANDARD OF REVIEW

On review of a trial court's grant of summary judgment, "we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to * * * the party opposing the motion." *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is proper only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 638, 20 P3d 180 (2001) (citing ORCP 47 C). "A genuine issue of material fact is lacking when 'no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.'" *Id.* at 638-39 (quoting ORCP 47 C).

## III. ANALYSIS

A. *Issue preclusion does not bar Scottsdale from asserting that the "Athletic Participant" exclusion bars coverage for liability for Warberg's injuries.*

The first question presented by this appeal is whether the letter opinion in *Warberg II* bars the grant of summary judgment in favor of Scottsdale under principles of issue preclusion. Leach argues that the trial court in this case was required to give preclusive effect to the *Warberg II* court's conclusion in its letter opinion that there are issues of material fact as to whether Warberg's injuries are excluded from coverage under the "Athletic Participant" exclusion. We disagree.

For a prior court decision to be afforded issue-preclusive effect, among other things, the pertinent issue must have been "actually litigated" and "essential to a final decision on the merits in the prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293

(1993). To satisfy that essentiality requirement, a prior court's resolution of an issue must either be apparent from the face of a judgment or order or, if not apparent from the face of a judgment or order, must have been necessary to the resolution of the prior adjudication. *See Westwood Construction Co. v. Hallmark Inns,* 182 Or App 624, 635-36, 50 P3d 238, *rev den,* 335 Or 42 (2002) (discussing the requirements of ORS 43.160, "which had its genesis in the common-law principle of issue preclusion").

Here, the *Warberg II* court's order granting summary judgment to Scottsdale did not state on its face that the court resolved any issue regarding the application of the "Athletic Participant" exclusion. Moreover, the court's determination that factual disputes precluded summary judgment in favor of Scottsdale based on the exclusion was not essential to the court's decision to grant summary judgment in favor of Scottsdale on the ground that the policy's anti-assignment clause barred Warberg's action. The scope of the "Athletic Participant" exclusion has no bearing on whether or not Leach was permitted to assign his claims against Scottsdale to Warberg. Accordingly, we reject Leach's argument that issue preclusion barred the trial court from granting summary judgment in favor of Scottsdale in this case.

B.   *The "Athletic Participant" exclusion did not entitle Scottsdale to summary judgment on the alleged breach of either the duty to defend or the duty to indemnify.*

The next question presented by this appeal is whether the trial court erred when it concluded that the summary judgment record demonstrates that Warberg's injuries are, as a matter of law, excluded from coverage under the policy's "Athletic Participant" exclusion. We conclude that it did.

1.   *The scope of the "Athletic Participant" exclusion*

As noted, the policy's "Athletic Participant" exclusion states that "this insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor." We interpret that provision in accordance with the framework outlined in *Hoffman Construction Co. v. Fred S. James*

& *Co.*, 313 Or 464, 836 P2d 703 (1992). *Rhiner v. Red Shield Ins. Co.*, 228 Or App 588, 592, 208 P3d 1043, *rev den*, 347 Or 348 (2009). "We begin with the wording of the policy, applying any definitions contained in the policy and otherwise presuming that words have their plain, ordinary meanings." *Rhiner*, 228 Or App at 592. "[W]e construe the text of the policy as a whole, rather than view particular parts of the policy in isolation." *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 353 Or 112, 122, 293 P3d 1036 (2012). "All parts and clauses of the policy 'must be construed to determine if and how far one clause is modified, limited or controlled by others.'" *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 24, 22 P3d 739 (2001) (quoting *Denton v. International Health & Life*, 270 Or 444, 450, 528 P2d 546 (1974)). If textual and contextual considerations fail to resolve the ambiguity, we construe the terms of the policy against the drafter. *Rhiner*, 228 Or App at 593. Our objective in this process is to ascertain the intent of the parties to the insurance contract "based on the terms and conditions of the insurance policy." *Hoffman*, 313 Or at 469.

Here, the parties' disagreement centers on whether Warberg was "*practicing for* *** any sports or athletic contest or exhibition*" sponsored by Leach by riding during the practice session. (Emphasis added.) The parties do not dispute that Warberg was not "participating in" any contest or exhibition at the time of his injury;[2] they also do not dispute that motocross is a sport. Instead, they disagree on whether the applicability of the provision turns on the particular purpose of the practice in which the injury occurs. Scottsdale asserts that the provision should be interpreted broadly to apply to persons injured while practicing motocross on

---

[2] Scottsdale at one point took the position that the "Athletic Participant" exclusion barred coverage because the motocross event in which Warberg was injured was an athletic "contest or exhibition" sponsored by Leach. On appeal, Scottsdale now appears to concede that Warberg's injuries were sustained during a "practice motocross run"—rather than during a contest or exhibition—and does not appear to dispute that Warberg was not practicing for the purpose of preparing for a contest or exhibition at the time of his injury. Instead of challenging that characterization, Scottsdale's argument on appeal is that the "Athletic Participant" exclusion bars coverage both for injuries sustained during contests or exhibitions *and* injuries sustained during any practice session, regardless of the purpose for that practice.

Leach's racetrack, regardless of whether the purpose of the practice is to prepare for a "contest or exhibition" sponsored by Leach. Leach, by contrast, asserts that the provision should be construed to require that the injured party be injured while practicing for the purpose of preparing for a contest or exhibition sponsored by Leach.

We agree with Leach that the applicability of the provision depends on the purpose for which the injured party is practicing. Leach's proposed interpretation gives effect to the entirety of the "Athletic Participant" exclusion. The use of the word "for" after "practicing" indicates that the exclusion applies when the "practicing" that leads to injury has the purpose or objective of preparing for a contest or exhibition. *See Webster's Third New Int'l Dictionary* 886 (unabridged ed 2002) (defining "for," as relevant here, as "a preparation toward," "in order to bring about or further," or "with the purpose or object of").

Scottsdale's interpretation, on the other hand, would omit text from the policy. "To qualify as a 'reasonable' construction, a proposed reading of the policy must, at the least, be consistent with the wording[.]" *Cain Petroleum Inc. v. Zurich American Ins. Co.*, 224 Or App 235, 242, 197 P3d 596 (2008), *rev den*, 346 Or 115 (2009). "[A] proposed interpretation [that] would require [this court] to disregard any provision of the policy * * * is not reasonable, as a matter of law." *Id.* Scottsdale's proffered interpretation fails that threshold test because it omits the requirement—imposed by the plain text of the exclusion—that the injured party must be "practicing *for*" a contest or exhibition sponsored by Leach. Under Scottsdale's interpretation of the exclusion, the mere engagement in sporting or athletic activity, even if the purpose of the activity were recreational, fitness related, or instructional, and not in preparation for a contest or exhibition, would bring an injured party within the scope of the exclusion. That simply is not what the terms of the provision state.

Nor does anything else in the policy support Scottsdale's proffered interpretation. In fact, the wording of a second exclusion—the "Athletic Activities" exclusion

(contained in the "Coverage C Medical Payments" section of the policy)—supports Leach's interpretation. That exclusion states that Scottsdale "will not pay [medical] expenses for 'bodily injury' * * * [t]o a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests." Unlike the "Athletic Participant" coverage exclusion, the "Athletic Activities" exclusion, by it terms, bars payments for medical expenses resulting from injuries occurring while the injured party was engaged in athletic activity, regardless of the purpose of that activity. Had the parties similarly intended the "Athletic Participant" exclusion to apply broadly to any person injured while practicing motocross on the racetrack, regardless of the purpose of the practice, they would have worded it the way that they worded the "Athletic Activities" exclusion. Their failure to do so indicates that they did not intend to exclude coverage for all injuries resulting from practicing a sport, regardless of the purpose of that practice.

We further observe that, although case law from other states is not binding upon us, the interpretation of the provision offered by Leach is consistent with that of other courts. *See Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or App 468, 481-82, 240 P3d 67 (2010), *rev den*, 349 Or 602 (2011) (observing that case law from other jurisdictions, "though not strictly following Oregon's method of policy interpretation, buttresses our own observation regarding the text of the exclusions"). Those courts have recognized that "[t]he purpose of [the 'Athletic Participant' exclusion] is to except from liability coverage the risks which are normally encountered in practicing for or participating in a *particular* sports contest or exhibition." *Jefferson Ins. Co. of New York v. Sea World of Florida, Inc.*, 586 So 2d 95, 97 (Fla Dist Ct App 1991) (emphasis added); *see also Mountain States Mut. Cas. Co. v. Northeastern New Mexico Fair Ass'n*, 84 NM 779, 783, 508 P2d 588, 591-92 (1973) ("We are of the opinion that 'practicing[]' * * * means performing the same act or acts required in the successful performance of the athletic or sports exhibition or contest in question, or at least the performance of an act or acts so similar as to develop the

particular capacities and skills essential to success in that sport or athletic event."). To effectuate that purpose, those courts generally have concluded that four elements must be satisfied for the exclusion to apply:

> "(1) that the event in which the person was injured was a contest or exhibition; (2) that the contest or exhibition was of an athletic or sports nature; (3) that the contest or exhibition was sponsored by the named insured; and (4) that the injured person was practicing for or participating in the contest or exhibition at the time of the injury."

*Jefferson Ins. Co. of New York*, 586 So 2d at 98 (quoting *Garcia v. St. Bernard Parish School Bd.*, 576 So 2d 975, 976-77 (La 1991)); *see also Sciolla v. West Bend Mut. Ins. Co.*, No 11-5604, 2013 WL 6671488 at *4-5 (ED Pa, Dec 18, 2013) (reciting test); *Zurich Reinsurance (London), Ltd. v. Westville Riding Club, Inc.*, 82 F Supp 2d 1254, 1256 (ED Okla 1999), *aff'd sub nom Zurich Reinsurance (London) Ltd. v. Remaley*, 203 F3d 837 (10th Cir 2000) (same); *Nautilus Ins. Co. v. Jesse James Festival, Inc.*, 269 SW 3d 442, 446 (Mo Ct App 2008) (same). Thus, the injured party must have been "practicing for or participating in" a *particular* athletic contest or exhibition at the time of the injury in order for the exclusion to bar coverage.

Notwithstanding the wording of the "Athletic Participant" exclusion, Scottsdale argues that this interpretation is unreasonable because it "would depend on the unspoken intent of the rider, potential claimant, rather than the purpose of the insured in sponsoring the activity." We reject that argument. In concluding that the "Athletic Participant" exclusion bars coverage for injuries sustained by persons "practicing for" a contest or exhibition, we do not hold that the injured party's subjective intent is determinative of whether that person was hurt "while practicing for * * * a contest or exhibition" sponsored by the named insured. Rather, the determination whether a party was "practicing for" a particular contest or exhibition sponsored by the named insured will involve an objective inquiry into the nature of the injured party's activity at the time of injury, the insured's objective in allowing that activity to occur, and other surrounding circumstances—just as the determination whether the injured

party was "participating in" a contest or exhibition sponsored by the insured also entails an objective inquiry into the circumstances surrounding the injury. *See, e.g., Tropical Park, Inc. v. U.S. Fidelity & Guaranty Co.*, 357 So 2d 253, 256-57 (Fla App 1978) (examining the objective nature of injured party's activity and purpose for the activity to conclude that racetrack "exercise boy" was not "practicing for or participating in" any race or competition sponsored by the named insured when boy was injured while exercising horse); *Zoller v. State Bd. of Ed.*, 278 So 2d 868, 869-70 (La App 1973) (looking at objective circumstances surrounding injury to assess whether college football player injured while weightlifting was "practicing for" a football contest or exhibition). Although an injured party's subjective understanding of the purpose of the practice may have some bearing on that determination, it is not dispositive as a matter of law as to whether the activity in which the injury occurred constituted "practicing for" a contest or exhibition sponsored by the named insured.

Finally, Scottsdale also contends that we must construe the "Athletic Participant" exclusion to eliminate coverage for Warberg's injuries in the light of Leach's deposition testimony that he thought the policy covered spectators only. However, "the interpretation of an insurance policy is a question of law that is confined to the four corners of the policy without regard to extrinsic evidence." *Rhiner*, 228 Or App at 593; *see Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 505, 156 P3d 105, *rev den*, 343 Or 363 (2007) ("[E]xtrinsic evidence of the parties' intent is not part of the interpretation of an insurance policy under Oregon law."); *Andres v. American Standard Ins. Co.*, 205 Or App 419, 424, 134 P3d 1061 (2006) ("[T]he interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself."). Accordingly, Leach's testimony regarding his understanding of the scope of coverage is not probative of the proper interpretation of the policy.

### 2. *Duty to defend*

Having construed the "Athletic Participant" exclusion to require that a person's injuries be sustained while

practicing for the purpose of preparing for, or while participating in, a contest or exhibition, we address whether the trial court erred in granting summary judgment to Scottsdale on Leach's claim that Scottsdale breached its duty to defend on the ground that the exclusion barred coverage as a matter of law. We conclude that it did.

Whether an insurer has a duty to defend its insured depends on the face of two documents: the complaint and the insurance policy. *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994). The duty to defend arises when, based on the facts alleged in the complaint, "the claim against the insured * * * could, without amendment, impose liability for conduct covered by the policy." *Id.* at 399-400. An insurer has a duty to defend "if the complaint provides *any basis* for which the insurer provides coverage." *Id.* at 400 (emphasis in original). Thus, even if the complaint "alleges some conduct outside the coverage of the policy," *id.*, the insurer may nonetheless have a duty to defend the insured if the complaint contains at least *one* claim covered by the policy, *Marleau v. Truck Insurance Exchange*, 333 Or 82, 91, 37 P3d 148 (2001). "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Ledford*, 319 Or at 400.

Here, the complaint is ambiguous "with respect to whether the allegations could be covered." *Id.* That is because the complaint does not allege facts permitting the conclusion that the purpose of Warberg's practice activity was to prepare for a contest or exhibition sponsored by Leach. Instead, the allegations in the complaint state simply that Warberg was "engaging in a practice motocross run at the motocross course," without identifying any facts or circumstances regarding the purpose of the practice session. Resolving the ambiguity in the complaint regarding the purpose of the practice session in favor of the insured, as we must, we conclude that the allegations gave rise to a duty to defend. The trial court therefore erred when it granted summary judgment in favor of Scottsdale on Leach's claim that Scottsdale breached its duty to defend.

### 3. *Duty to indemnify*

We next address whether the trial court erred in granting summary judgment to Scottsdale on Leach's claim that Scottsdale breached its duty to indemnify on the ground that the "Athletic Participant" exclusion barred coverage as a matter of law.[3] In contrast to the duty to defend, the duty to indemnify arises only where the insured is actually "liable for harm or injury that is covered by the policy." *Ledford*, 319 at 405; *see Northwest Pump v. American States Ins. Co.*, 144 Or App 222, 227, 925 P2d 1241 (1996) ("[T]he duty to indemnify is established by proof of actual facts demonstrating a right to coverage."). For that reason, we examine the entire summary judgment record—instead of just the complaint and the policy—to determine whether the undisputed facts, viewed in the light most favorable to Leach, demonstrate as a matter of law that Warberg's injuries are excluded from coverage by the "Athletic Participant" exclusion. We conclude that they do not.

Specifically, if all factual disputes are resolved in favor of Leach, the evidence in the summary judgment record would permit a reasonable factfinder to find that Warberg was not "practicing for" a contest or exhibition sponsored by Leach at the time of his injury. It is undisputed that Warberg was injured in a practice session, and it is undisputed that no races were held on the day of that practice session. In addition, Warberg testified that, "[a]t the time of my injuries, I was not practicing for a race, competition, contest, or exhibition." Finally, when asked to compare the number of laps run on practice days versus race days, Leach explained:

> "I would almost guess that maybe there's more on practice days. You know, you've got—you've got a lot of people in the sport that they don't like to race. They just want to ride so, you know, you might get a few more of those guys that show up on a practice day than you do on a race day."

---

[3] Leach argues in his reply brief that the trial court did not decide whether the "Athletic Participant" exclusion established that Scottsdale had no duty to indemnify Leach, although his opening brief appears to treat the trial court's decision as having resolved that issue. Although the trial court's ruling is unclear, we read the ruling to have reached the issue of both the duty to defend and the duty to indemnify.

That evidence would permit a factfinder to find that the purpose of the practice session in which Warberg was injured was simply recreational, and was not for the purpose of preparing for a contest or exhibition sponsored by Leach. The trial court therefore erred by granting summary judgment to Scottsdale on the ground that Scottsdale had no duty to indemnify Leach in the light of the "Athletic Participant" exclusion.

C. *The covenant not to execute did not entitle Scottsdale to summary judgment on the alleged breach of the duty to indemnify.*

The final question presented by this appeal is whether the evidence that Warberg entered into a covenant not to execute on the stipulated judgment against Leach entitled Scottsdale to summary judgment under *Stubblefield* on the claim for breach of the duty to indemnify. We conclude that it did not.

Under *Stubblefield*, "when an insured is released from liability to the assignee, the insured is not legally obligated to his assignee, and the insurance company in turn is not obligated to its insured." *Lancaster v. Royal Ins. Co. of America*, 302 Or 62, 67, 726 P2d 371 (1986) (describing *Stubblefield* rule). "[F]or the rule of *Stubblefield* to apply, [the agreement between the insured and the assignee] must 'unambiguously' and 'unconditionally' eliminate any liability for which insurance coverage might * * * be triggered." *Terrain Tamers v. Insurance Marketing Corp.*, 210 Or App 534, 540, 152 P3d 915, *rev den*, 343 Or 115 (2007) (quoting *Lancaster*, 302 Or at 66-67); *see Oregon Mutual Ins. Co. v. Gibson*, 88 Or App 574, 578, 746 P2d 245 (1987) (*Stubblefield* rule applies where "the language of the covenant involved unambiguously states that the insured is not legally obligated to pay plaintiff any more than what was paid on his behalf by [the insurer]," thereby "unconditionally insulat-[ing] the insured from any liability over that amount").

The summary judgment record in this case does not permit us to conclude, as a matter of law, that the agreement between Leach and Warberg extinguished Leach's

liability to Warberg. Although the text of the agreement states unambiguously that "Warberg hereby agrees not to enforce the Judgment against Leach by execution or any other manner against Leach," the text of the agreement also states that that covenant not to execute was "in exchange for" Leach's assignment of rights to Warberg. That suggests that the covenant was in consideration for the assignment, but the summary judgment record reflects that the *Warberg II* court invalidated the agreement between Warberg and Leach to the extent that it assigned Leach's rights against Scottsdale. That partial invalidation of the assignment creates a factual issue as to whether Leach's liability to Warberg has been extinguished, because it creates a factual issue as to whether the covenant not to execute remains in force.[4]

"The extent to which a contract is divisible and whether one promise may be severed from another depends on the intention of the parties," to be determined by examining the wording of the contract and other pertinent circumstances. *Care Medical Equipment, Inc. v. Baldwin*, 331 Or 413, 418-19, 15 P3d 561 (2000). Here, the terms of the agreement are ambiguous as to whether the covenant not to execute is severable from the assignment and, in particular, ambiguous as to whether the parties to that agreement— Leach and Warberg—intended that the partial invalidation of the assignment would render the covenant not to execute unenforceable. The agreement contains no severability provision or other explicit indicator of what Leach and Warberg intended in the event that any part of the agreement was determined to be unenforceable. That ambiguity creates an issue of fact as to whether the agreement is severable and,

---

[4] The fact that the assignment given in exchange for the covenant not to execute has been partially invalidated distinguishes this case from *Brownstone Homes Condo. Assn. v. Brownstone Forest Hts.*, 255 Or App 390, 298 P3d 1228, *rev allowed*, 353 Or 867 (2013). In *Brownstone Homes*, we held that an unqualified covenant not to execute on a stipulated judgment against an insured—similar to the covenant at issue in this case—extinguished claims against the insurer under the *Stubblefield* rule. 255 Or App at 400-01. However, in *Brownstone Homes*, there was no evidence in the summary judgment record calling into question the continued validity of the covenant not to execute, as there is here. The Oregon Supreme Court has allowed review in *Brownstone Homes. Brownstone Homes Condo. Assn. v. Brownstone Forest Hts.*, 353 Or 867, 306 P3d 639 (2013).

correlatively, whether the covenant not to execute remains effective.[5] Further, Leach's statement in his declaration that he "ha[s] a 1.5 million dollar Judgment outstanding" suggests that Leach remains liable on the stipulated judgment, also calling into question whether Leach's liability has been extinguished by the covenant not to execute under the circumstances present here. Scottsdale, therefore, was not entitled to summary judgment on Leach's claim for breach of the duty to indemnify under the *Stubblefield* rule.[6] *See Lancaster*, 302 Or at 68-69 (insurer was not entitled to summary judgment under *Stubblefield* rule where there was dispute of fact as to whether insured's liability to plaintiff was completely extinguished by covenant not to execute given in exchange for assignment).

---

[5] As a general rule, when a contract is ambiguous, "ascertaining its meaning is a question of fact" that is not susceptible to resolution on summary judgment. *Madson v. Oregon Conf. of Seventh-Day Adventists*, 209 Or App 380, 389, 149 P3d 217 (2006). Although that rule has several exceptions, *see Dial Temporary Help Service v. DLF Int'l Seeds*, 255 Or App 609, 611-13, 298 P3d 1234 (2013), even if those exceptions could apply here, we would decline to apply them because of the parties' failure to grapple with the conspicuous question presented by the summary judgment record: whether Leach and Warberg intended that the partial invalidation of the assignment would render the covenant not to execute ineffective as well. The trial court is in the best position to address that question in the first instance. *See Hammond v. Hammond*, 246 Or App 775, 783, 268 P3d 691 (2011) (remanding to trial court to "consider whether available extrinsic evidence" resolved the issue of the intent of the parties to an agreement).

[6] Leach also argues that ORS 31.825 preserves his cause of action against Scottsdale, regardless of the *Stubblefield* rule. That statute, which abrogates the *Stubblefield* rule, provides:

"A defendant in a tort action against whom a judgment has been rendered may assign any cause of action that defendant has against the defendant's insurer as a result of the judgment to the plaintiff in whose favor the judgment has been entered. That assignment and any release or covenant given for the assignment shall not extinguish the cause of action against the insurer unless the assignment specifically so provides."

ORS 31.825. In view of our determination that the summary judgment record does not permit the conclusion, as a matter of law, that the *Stubblefield* rule applies on the facts of this case, we do not address whether ORS 31.825 would operate to preserve Leach's cause of action against Scottsdale under the circumstances present here. We note, however, that the "Assignment and Covenant Not to Execute" between Leach and Warberg specifically invoked that statute ("pursuant to ORS 31.825, Leach * * * assign[ed] all his rights of recovery * * *"), thereby manifesting an intent to avoid the *Stubblefield* rule. That lends further support to our conclusion that there is, at the very least, a question of fact as to whether Leach and Warberg would have intended their agreement to extinguish Leach's liability in the event that the assignment was unenforceable.

## IV. CONCLUSION

For the foregoing reasons, the trial court erred by granting summary judgment in favor of Scottsdale. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.